# Grievance of Darwin Merrill

[596 A.2d 345]

No. 89-603

Present: Allen, C.J., Gibson, Dooley and Johnson, JJ.

Opinion Filed July 5, 1991

*Norman R. Blais* of *Blais, Cain, Keller & Fowler, Inc.*, Burlington, for Plaintiff-Appellee.

*Jeffrey L. Amestoy*, Attorney General, and *Michael Seibert*, Assistant Attorney General, Montpelier, for Defendant-Appellant.

*Michael R. Zimmerman*, Montpelier, for amicus curiae VSEA.

**Johnson, J.** The State of Vermont appeals from an order of the Vermont Labor Relations Board awarding grievant back pay, following the Board's 1985 decision reinstating him to his position as chief of the CRASH program and this Court's affirmance of that decision in *In re Merrill*, 151 Vt. 270, 559 A.2d 651 (1988). We affirm in part and reverse in part and remand the matter for further consideration in light of this opinion.

Grievant was fired from his job on October 5, 1984, and on October 3, 1985, the Board ruled that he had been unjustly fired and reinstated him to his former position. The State appealed that decision to this Court and successfully opposed grievant's superior court motion for reinstatement pending appeal.

While awaiting the outcome of his appeal, grievant first worked for more than two years as a truck driver. In 1987 he and a partner began a business selling breathalizer devices. Grievant loaned the venture $21,000. The partnership agreement provided that grievant's partner would receive a salary of $12,000 per year, and that grievant would receive no salary. Grievant began by working nights and weekends for the business, while his partner worked full-time. Grievant devoted full-time to the partnership, however, from May 1988 to April 1989, when this Court affirmed the Board's decision upholding his grievance and he resumed his position. The partnership grossed $75,000 during 1988, and, after deduction of the $12,000 salary for grievant's partner, showed a net loss of $3,820 for that year. During the life of the partnership, there were no funds to repay the loan or to pay grievant any salary.

Upon reinstatement, grievant sold his interest in the business to his partner. The sale agreement provided that grievant would recover his initial investment of $21,000 and receive another $14,000, which the Board found was "in recognition of the value of the partnership." A note, secured by a second mortgage on the partner's house, called for interest payments only for the first twelve months, and payments of principal and interest thereafter. Grievant received no other return from his investment in the partnership.

The Board conducted a hearing on back pay on July 20, 1989, and issued a preliminary order on October 5, 1989, which rejected the State's argument that the $14,000 excess return over grievant's loan to the partnership should be considered earnings in computing the mitigation of damages. A final order was issued on November 2, 1989, after the parties stipulated to an interest calculation based on *net* pay during the period, rather than *gross* pay, which would have favored grievant.

The State appealed to this Court, but later moved for a partial remand to correct the amount arrived at by stipulation, after it discovered a mathematical error that dramatically increased the total interest on the accumulated back pay. Grievant opposed the remand, but this Court ordered the Board to consider the claim of mistake, and the Board conducted a hearing on March 22, 1990. On May 31, 1990, the Board permitted correction of the error, but also amended the prior order to al-

low computation of interest on the basis of gross, rather than net, pay, in accordance with an argument raised by grievant at the hearing on the State's motion.

Adding to its original appeal, which had been retained by this Court, the State took exception to that part of the Board's order on remand recomputing interest on the basis of gross pay. The State argued that the Board went beyond the terms of the limited remand in considering the question.

■■ The State argues on appeal that the Board should have restricted its reopened proceedings to the issue raised by the State, namely the mathematical error. We do not agree. It is true that this Court granted the State's "motion for an order remanding the instant matter to the Vermont Labor Relations Board in order *to rule on [the State's] motion to reopen.*" (Emphasis added.) Upon remand, the Board decided to reopen its November 2, 1989 order and to correct "the obvious error made by the State in calculating interest due on back pay." It was careful to point out that in reopening the order, it was exercising its discretion, based on V.R.C.P. 60(b)(6),* which allows for relief from a final order for "any other reason justifying relief from the operation of the judgment." The central theme of this provision is the prevention of hardship or injustice. *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc.*, 149 Vt. 365, 368, 543 A.2d 1320, 1322 (1988). A grant of relief from judgment under Rule 60(b) "is not subject to appellate review unless it clearly and affirmatively appears from the record that such discretion was withheld or otherwise abused." *R. Brown & Sons, Inc. v. International Harvester Corp.*, 142 Vt. 140, 143, 453 A.2d 83, 85 (1982).

■■ In the present case, the Board's November 2, 1989 order was based on a stipulation that included a concession by grievant to calculation of interest on the basis of net pay. But that concession was made in the context of an aggregate amount of back pay that was satisfactory to grievant, albeit based on a mistaken calculation. The State is asking the Board and this Court to alter a mutual agreement in the State's favor

---

* V.R.C.P. 60 was adopted by the Board in § 12.1 of its Rules of Practice (1987).

without allowing grievant to withdraw a concession that was based on that agreement. To the extent the stipulation constituted a waiver of the claim to interest on gross back pay, the waiver was conditional and was discharged by the State's own motion to reopen. In light of the Board's duty under Rule 60(b)(6) to prevent injustice in reopening, it did not err in considering issues of equity raised by both parties.

■ On the merits, this Court will not disturb the Board's findings unless they are clearly erroneous. *In re Muzzy*, 141 Vt. 463, 470, 449 A.2d 970, 973 (1982). The practice of awarding interest on back pay awards under the National Labor Relations Act (FELA) dates back to at least 1962. See *Isis Plumbing & Heating Co.*, 138 N.L.R.B. 716 *passim* (1962), *enforcement denied on other grounds*, 322 F.2d 913 (9th Cir. 1963). It has been the practice of the National Labor Relations Board (hereinafter NLRB) to consider the entire amount of back pay as the basis for interest awards. See, e.g., *Florida Steel Corp.*, 231 N.L.R.B. 651, 652 (1977)("interest to accrue . . . on the total amount then due and owing"). We are aware of only one case under the FELA that has considered the question of whether interest on back pay should apply to net or gross pay, *Inta-Roto, Inc.*, 267 N.L.R.B. 1026 (1983). The NLRB in that case upheld the decision of the administrative law judge, rejecting the employer's plea that interest be applied to the net back pay, after deduction of amounts withheld. While the employer in the present case argues that the reason for the decision in *Inta-Roto* was the absence of pertinent data on the deductions, that decision rested on the more conclusive rationale that the long-standing "established practice" of the NLRB made sense in light of the uncertainty of the taxation of a large lump sum award to the cash-basis grievant in that case. *Id.* at 1029.

■ Even more fundamental to the matter before us, it was within the Board's discretion to use the gross amount of back pay as a starting point for determining interest, since that was the amount which the employer failed either to pay grievant or to withhold on his account. In formulating remedial orders, the Board has wide discretion as to the method of back pay calculation, and reversal is only warranted if "the method chosen was so irrational as to amount to an abuse of discretion."

*Bagel Bakers Council v. NLRB*, 555 F.2d 304, 305 (2d Cir. 1977) (per curiam); see *NLRB v. Brown & Root, Inc.*, 311 F.2d 447, 452 (8th Cir. 1963) (Board's method of back pay calculation will be upheld unless it is arbitrary or unreasonable). As the court said in *Bagel Bakers Council*:

> A back pay award is only an approximation, necessitated by the employer's wrongful conduct. In any case, there may be several equally valid methods of computation, each yielding a somewhat different result. . . . The fact that the Board necessarily chose to proceed by one method rather than another hardly makes out a case of abuse of discretion.

555 F.2d at 305. The Board is not compelled to consider adjustments which themselves are clouded by uncertainty and which need not be considered to yield a result that is fair and equitable under all of the circumstances of the case.

■■ The State next challenges the Board's failure to reduce grievant's award by the $14,000 he received upon sale of his share of the business to his former partner. The proper remedy for improper discharge includes an award of "back pay and other emoluments from the date of the improper discharge less sums of money earned or that without excuse should have been earned since that date." *In re Brooks*, 135 Vt. 563, 570, 382 A.2d 204, 209 (1977); see *In re Hurlburt*, 9 V.L.R.B. 229 (1986). "Sums of money earned" is not limited to wages earned from an employer. If an employee engages in self-employment after improper discharge, the net profits of the self-employment may be chargeable against a back pay award. *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 188 (1973); *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 148 (2d Cir. 1968). The State contends that the $14,000 constituted net profits of grievant's self-employment.

The Board concluded that the State did not meet "its burden of demonstrating that the $14,000 was 'money earned' during the life of the partnership." It gave no reason for its conclusion but stated:

> It is particularly compelling to us that Grievant has yet to receive any cash payment from the partnership and, based on the evidence before us, we cannot conclude with reason-

able certainty that he will actually receive the $14,000 from the sale of the partnership. Such a possibility is speculative.

In disregarding the $14,000, the Board ruled, in effect, that the note grievant received for his interest in the partnership was worthless. The record does not support that conclusion. It appears that the note is collateralized by a second mortgage on the former partner's house, though the former partner's equity in the property does not appear in the record.

Other than this erroneous statement, the Board gave no reasons for its conclusion that the $14,000 was not "money earned." Since we will not be left to speculate about the effect of the Board's erroneous determination on its decision, we must reverse and remand for further findings regarding the nature of the $14,000. See *Saufroy v. Town of Danville*, 148 Vt. 624, 626, 538 A.2d 168, 169 (1987). Grievant's back pay award should be reduced by any portion of the $14,000 that the Board determines constitutes net profits to grievant from his self-employment in the partnership. The Board's decision is otherwise affirmed.

*The decision of the Board is affirmed in part and reversed in part and remanded for further proceedings in accordance with this opinion.*