### In re Grievance of Sedney Ulrich

[597 A.2d 314]

No. 89-608

Present: **Allen, C.J., Gibson, Dooley and Johnson, JJ.**

Opinion Filed August 23, 1991

*Michael R. Zimmerman,* VSEA Staff Attorney, Montpelier, for Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, and *Michael Seibert,* Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Allen, C.J.** Grievant, a state employee, appeals from an order of the Vermont Labor Relations Board dismissing her grievance. We affirm.

In early 1985 the Division of Mental Retardation, Department of Mental Health, employed grievant as a Mental Retardation Protective Services Worker, pay grade 13. In May of that year, the Department asked grievant to supervise the care of fifteen retarded adults until it was able to find a new private contractor to provide those services. As a result of the change in her job duties, grievant's position was temporarily reallocated to the position of Brandon Training School Program Supervisor, pay grade 17. By the end of 1987, grievant was assigned to pay grade 24, and effective January 1988, grievant's position was permanently reallocated to that higher grade.

In May 1988, the Division reached an agreement with a private mental health organization to provide, among other things, the services that grievant had administered over the previous three years. The Division informed grievant that she would be reassigned to her old position as a protective services worker and that she would not have reduction in force (RIF) rights. If she had had RIF rights that summer, she would have been entitled to a pay grade 24 position for which she had applied but was not hired. On October 30, 1988, grievant's position was reallocated to Mental Retardation Protective Services Worker, pay grade 19. As a result of the reallocation, plaintiff's salary increased by twenty-six cents per hour; however, her future salary increases within the lower pay grade were limited, and her next salary increase would not be available for a longer period than if she had remained at pay grade 24.

Grievant argued that the Department violated the collective bargaining agreement (Contract) by involuntarily demoting her and by refusing to provide her with RIF rights. The Board concluded that the Contract permitted the downward reallocation of her position because her "demotion" was "for cause" and that no "reduction in force" had occurred. The Board further concluded that grievant had waived her argument that she was entitled to RIF rights under Article 2 of the Contract, which provides RIF rights to employees who are laid off because the work they performed had been contracted out.

On appeal, grievant argues that the Board erred in concluding (1) that grievant was demoted "for cause," and (2) that grievant had waived her right to argue that the employer had violated Article 2 of the Contract.

█ Grievant's first argument is settled by our recent decision in *In re Hood*, 156 Vt. 412, 592 A.2d 907 (1991). Although we disagree with the Board's conclusion that a downward reallocation is a demotion "for cause," we agree with the Board that the State has the authority to reallocate unilaterally positions downward, subject to challenge through a classification grievance. *Id.* at 416, 592 A.2d at 909. Thus, the Board properly dismissed grievant's claim that the State had involuntarily demoted her in violation of the collective bargaining agreement.

Regarding the second claim of error, grievant does not challenge on appeal the Board's conclusion that the downward real-

location of her position did not constitute a "reduction in force." Rather, grievant challenges the Board's determination that she waived her right to argue that the Department violated Article 2 of the Contract by not providing her with RIF rights. Under Article 2,

> the State may contract out work . . . and may discontinue services or programs, in whole or in part. As a result of such discontinuance a permanent status employee who is laid off shall have reduction in force rights under Article 71.
>
> . . . .
>
> . . . A permanent status employee who, as a result of contracting out, loses his job will be deemed to have been reduced in force under Article 71, Reduction in Force.

Although she sought RIF rights, grievant did not specifically allege a violation of Article 2 of the Contract at any of the prior steps of the grievance procedure, including Step III, the appeal to the Department of Personnel, which precedes a Step IV appeal to the Board. In her Step III grievance filing, grievant listed the following applicable Contract sections: Article 18, Article 20, Article 71, "and any and all other relevant articles, provisions of Personnel Rules and Regulations, Vermont Statutes and other applicable law."

An appeal to the Board "shall be . . . in accordance with the rules and regulations established by the Board." Contract, Article 18, section 3D. As the Board pointed out, Article 18 of the Contract (Grievance Procedure) requires that a grievance contain certain information, including "[s]pecific references to the pertinent section(s) of the contract or of the rules and regulations alleged to have been violated." Section 2b. A Step III grievance "shall be submitted . . . in the form set forth under Section 2b, above, within ten workdays . . . of the Step II decision, otherwise the matter shall be considered closed." Article 18, section 3C(a). The Board concluded that "[t]his language mandates specific raising of issues when the grievance is first submitted or the right to raise the issue is waived."

According to grievant, the Step III hearing officer was under constructive notice that grievant was claiming a violation of Article 2 because he knew (1) that grievant sought RIF rights, (2) that RIF rights are available in only three situations, one of

which is the contracting out of a state employee's job, and (3) that grievant's former position had been contracted out. Grievant contends that past Board decisions do not stand for the proposition that the Board will consider only issues on which the relevant sections or rules were cited, but rather that the Board will consider only issues raised at earlier proceedings, regardless of the references. Further, grievant insists that Article 18 requires closure of the matter upon failure to file the grievance within ten days, not failure to list every relevant provision. Cf. *Cone Mills Corp.*, 86 Lab. Arb. 992, 996 (1986) (construing a similar provision, arbitrator held that union's failure to cite relevant provision did not constitute abandonment of the grievance because underlying issues were squarely raised throughout grievance procedure). We agree with the Board that grievant did not sufficiently raise the issue of whether she was entitled to RIF rights under Article 2.

 The grievance procedure seeks to have employees and employers "reconcile their differences as quickly as possible at the lowest possible organization level." Article 18, section 1a. Toward that end, the rules require that grievants make known the specifics of their complaints before their disputes reach the Board. In the instant case, it is manifest from the Step III filing and the hearing officer's ruling that grievant never suggested that she should "be deemed to have been reduced in force" as a result of the contracting out of the work that she once performed. That *issue* was never raised before the appeal reached the Board. The fact that grievant claimed that she was entitled to RIF rights does not indicate that the hearing officer was on notice as to the Article 2 claim. Grievant claimed RIF rights and cited Article 71, which explains when a reduction in force occurs, who receives benefits, and what procedures are followed.* The hearing officer denied the grievance because no reduction in force, as defined by the contract, had occurred. Whether there was a reduction in force is a distinct issue from

---

* The provision of RIF rights to employees who have been laid off as a result of the contracting out of the work they had performed is not covered under Article 71 because no reduction in force has occurred. Under Article 2, RIF rights are available to such employees as if there had been a reduction in force.

whether grievant was entitled to RIF rights pursuant to Article 2, which allows RIF benefits even when no actual reduction in force occurs. The hearing officer should not be expected to speculate as to grievant's claim. A grievant must give sufficient notice of a specific issue at an earlier grievance step in order to preserve the issue before the Board. *In re Colleran*, 6 V.L.R.B. 235, 259 (1983); cf. *In re Hetzel*, 8 V.L.R.B. 325, 331 (1985) (failure to cite specific section concerning discrimination was not fatal where discrimination claim had been part of grievance since it was first filed). This rule encourages grievants to have their disputes resolved before they reach the Board. The Board did not err in concluding that grievant's failure to provide fair notice of her Article 2 argument waived the claim.

*Affirmed.*