## In re Grievance of Warren Whitney, et al.

[719 A.2d 875]

No. 96-535

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Wesley, Supr. J., Specially Assigned**

Opinion Filed August 7, 1998

*Samuel C. Palmisano,* VSEA Legal Counsel, and *Mark Heyman,* Assistant Legal Counsel, Montpelier, for Plaintiffs-Appellees.

*William H. Sorrell,* Attorney General, and *David K. Herlihy,* Assistant Attorney General, Montpelier, for Defendant-Appellant.

**Dooley, J.** The State of Vermont (Department of Public Safety) appeals from a ruling of the Vermont Labor Relations Board which granted back pay to certain detective investigators (grievants) with the Vermont State Police because the State had impermissibly changed the holiday staffing schedule. The back pay award provided compensation for the holidays that each grievant would have worked under the prior schedule minus any standby and call-out pay the grievants received under the new schedule. The State argues that the Board's decision was erroneous because (1) the holiday staffing issue was not properly raised during the grievance process and before the Board; (2) grievants' claim is barred by the State Employee Labor Relations Act (SELRA); and (3) the back pay award was not tied to actual damages suffered by the grievants. We affirm.

Prior to June 1, 1995, the detective investigators' work schedules consisted of regular Monday through Friday shifts, with weekend

coverage provided by one officer within each troop on a rotating basis. The assigned detective investigator was scheduled to be off on Thursday and Friday and to work on Saturday and Sunday. When a detective worked the weekend shift, he received a fifty-dollar premium pursuant to the collective bargaining agreement between the State of Vermont and the Vermont State Employees' Association, Inc. (VSEA). In addition, a detective who worked a duty weekend also worked any holiday that occurred during the following week and received, per the contract, holiday compensation of time and one half.

On June 1, 1995, the director of the Bureau of Criminal Investigation unilaterally changed the schedule. The new schedule required all detective investigators to work a regular Monday through Friday week. Rather than having a weekend duty officer, the new schedule provided weekend coverage by assigning a designated detective to carry a pager and remain on standby status. The standby detective also covered holidays that occurred during the week following the standby weekend. Detectives assigned to standby status on the weekends or holidays received one eighth of their regular pay for each hour of standby. If the detective was called in to work, the detective received at least four hours of overtime pay.

Certain detective investigators opposed the schedule change and, through VSEA, filed a grievance with the Department of Personnel (step III of the contracted grievance process). The grievance was not resolved at the step III level, and consequently, on September 19, 1995, VSEA filed a grievance with the Board. The grievants contended that the schedule change violated Articles 2, 20 and 21 of the collective bargaining agreement and deprived them of regularly scheduled days off. Specifically, grievants argued that Article 21, Section 2 of the collective bargaining agreement defined the regular work schedule and incorporated the shift schedules existing on June 30, 1988. Thus, they argued that any changes to the work schedule must occur through the collective bargaining process and could not be unilaterally imposed by management.

On February 1, 1996, prior to any Board hearing on the grievance, the State agreed to return to the schedule that existed prior to June 1, 1995. Nevertheless, grievants went forward with the Board hearing in an effort to obtain compensation for the days they would have been scheduled to work under the previous schedule. On June 14, 1996, the Board issued its findings, opinion and order, holding that the State had improperly changed grievants' schedule without use of the bargaining process. It decided that because grievants had been

compensated for standby status, no financial remedy was appropriate for the change in the weekend coverage schedule during the eight months it was in effect. It also decided, however, that compensation was appropriate for the holidays that grievants would have worked during that period. The Board's compensation scheme called for dividing the total number of holiday hours during the period equally among the fifteen grievants, with each grievant being compensated at his or her overtime holiday pay rate.

VSEA moved to amend the judgment because the State refused to revert to the pre-June, 1995 schedule for holiday coverage despite its promise to do so. The State resisted this request, arguing that holiday coverage was never part of the grievance. On this basis and because the remedy provided pay for days never worked, it also sought to amend the judgment to strike the back pay award for holiday coverage. The Board sided with VSEA; it found that the grievance always covered holiday, as well as weekend, scheduling; and it ordered the State to revert to the prior schedule for holiday coverage. It rejected the State's argument that a back pay award was improper, but modified its order so that each individual grievant was compensated based on holiday hours that the grievant would have worked under the previous schedule, less any actual pay received for stand-by and call-outs. This appeal followed.

We begin by noting that the State has not appealed the merits of the Board's decision that the unilateral change in the holiday coverage schedule, without collective bargaining, violated provisions of the contract between VSEA and the State. Its arguments on appeal are: (1) the issue of holiday coverage was not raised in the grievance appeal to the Board; (2) the issue of holiday coverage was not raised in earlier steps of the grievance process, and, thus, could not be considered by the Board; (3) awarding pay for days where work is not needed by the employer violates SELRA, 3 V.S.A. § 962(7); and (4) the Board cannot award back pay for days on which grievants did not actually work.

The State's first argument is that the issue of holiday staffing was not properly raised in the appeal to the Board. The Board disagreed, holding that the issue of holiday staffing was sufficiently raised in the grievance and in the evidence presented at the hearing. Grievants support the Board's rationale, adding that if the issue of holiday coverage was not raised sufficiently in the grievance, it was tried by the implied consent of the parties.

The Board has the power to specify grievance procedure by rule. See 3 V.S.A. §§ 926, 928(a). Pursuant to this power, the Board has

adopted a rule requiring that a notice of grievance contain a concise statement of the nature of the grievance, references to the specific sections of the collective bargaining agreement or rules and regulations alleged to have been violated, and a brief statement of facts concerning the grievance. Vermont Labor Relations Bd., Rules of Practice § 18.3(C), (D) & (E); see also *In re Ulrich*, 157 Vt. 290, 293-94, 597 A.2d 314, 315-16 (1991) (relying on similar provisions of collective bargaining agreement). Notice is adequate in an administrative proceeding if the parties are sufficiently apprised of the nature of the proceeding so that there is no unfair surprise. See *In re Vermont Health Service Corp.*, 155 Vt. 457, 460, 586 A.2d 1145, 1147 (1990).

We treat the Board's decisions with deference, see *In re Towle*, 164 Vt. 145, 148, 665 A.2d 55, 58 (1995), and presume the Board's decisions are correct and reasonable. See *In re West*, 165 Vt. 445, 449, 685 A.2d 1099, 1102 (1996). We agree with the Board that the grievance appeal in this case was adequate to raise the issue of holiday staffing. The appeal provided that the State on May 15, 1995 unilaterally, and over the objection of VSEA, instituted a schedule change which entailed the conversion of regularly scheduled days off to standby duty; that the schedule changes violated Articles 2, 20 and 21 of the collective bargaining contract; and VSEA requested that the Board order that the State "immediately rescind the . . . schedule change posted May 15, 1995, and reinstate the schedule worked prior to that." The grievance covered the entire schedule change that occurred on May 15, 1995. It was not limited to the change in the weekend staffing policy. It never mentioned separately either the holiday or weekend staffing policy.

The State argues that the grievance was inadequate because the term "schedule" does not cover holiday staffing and grievants never alleged a violation of Article 22, the article that specifically covers holidays. In its decision on the merits, the Board rejected these points. That is, the Board held that the change in holiday staffing policy affected the workers' schedule and violated Article 21 which required that shift schedules be maintained as those in effect on June 30, 1988 unless modified after further bargaining. The Board necessarily held that the theory of the case presented in the grievance covered holiday staffing.

Even if the grievance were inadequate to present the issue of holiday staffing, the issue was tried by the implied consent of the parties. In a civil case, if an unpled issue is raised at trial, and the

opposing party had an ample opportunity to object and failed to do so, the issue is treated as having been raised by the pleadings. See V.R.C.P. 15(b) (unpled issues tried by "express or implied consent" are treated "in all respects as if they had been raised in the pleadings"); *Silva v. Stevens*, 156 Vt. 94, 106, 589 A.2d 852, 859 (1991) (where defendant failed to object to introduction of evidence bearing on unpled issue and failed to object to issue being charged to jury, defendant impliedly consented to trial of issue); *Concra Corp. v. Andrus*, 141 Vt. 169, 172, 446 A.2d 363, 364 (1982) ("Because the partnership issue was tried without objection [at trial], it is treated as having been raised by the pleadings."). The Board has applied the doctrine of trial by consent in unfair labor practices cases. See *Vermont State Employees' Ass'n v. State*, 7 V.L.R.B. 115, 117 (1984). It is generally applicable to administrative hearings. See *Yellow Freight System, Inc. v. Martin*, 954 F.2d 353, 358 (6th Cir. 1992).

■ Grievants raised the issue of holiday staffing numerous times during the Board hearing. They raised it in their opening statement to the Board, during the direct examination of two witnesses and in a colloquy with counsel for the State at the end of the hearing. They addressed it in their proposed findings and conclusions of law and requested relief for lost holiday wages. The State never objected to the arguments of grievants' counsel or the evidence on the issue, nor did it state that the issue was not in the case. We are unpersuaded by the State's argument that discussion of holiday staffing during the presentation of the case did not put it on notice that the holiday staffing issue was in the case because weekend staffing and holiday staffing were intertwined. Nor are we persuaded that the State could not object to the grievants' inclusion of holiday staffing in their proposed findings and conclusions because the Board required both parties to submit proposed findings and conclusions on the same date. If the State wanted to exclude consideration of holiday staffing from the Board proceeding, it had to object to at least one of the numerous ways it was presented to the Board by grievants. In the absence of an objection, the issue was tried by implied consent.

In a related argument, the State argues that grievants failed to present the issue of holiday staffing at the prior step of the grievance process and, as a result, were foreclosed from raising it before the Board. The Board never ruled on this argument because the State has presented it for the first time on appeal.

We will not consider issues raised for the first time in this Court. See *In re Moriarty*, 156 Vt. 160, 165, 588 A.2d 1063, 1065 (1991). The

State argues, nevertheless, that we must because this is a jurisdictional defect that cannot be waived.

We agree that if the State had properly objected, a grievant is precluded from raising an issue before the Board if it has not been raised at earlier steps in the grievance process. See *Ulrich*, 157 Vt. at 294, 597 A.2d at 316; *D'Aleo v. Vermont State Colleges*, 141 Vt. 534, 540, 450 A.2d 1127, 1131 (1982). We also agree that the Board has only such jurisdiction as it is given by the Legislature by statute. See *In re Brooks*, 135 Vt. 563, 570, 382 A.2d 204, 208-09 (1977).

■ In general, however, we require preservation of an issue in an administrative forum even if it can be called jurisdictional. See *In re Denio*, 158 Vt. 230, 234, 608 A.2d 1166, 1168-69 (1992). We look to three factors: extent of injury from pursuing the administrative remedy, the degree of clarity about administrative jurisdiction and the involvement of specialized understanding of the administrative board. See *id.* at 234-35, 608 A.2d at 1169. In this case, there was no reason why the State did not raise the issue before the Board and no barrier to its doing so. We hold that the State is foreclosed from arguing that the Board could not consider the holiday staffing issue because it was not raised at step III.

■ The State also contends that the holiday pay issue is barred by SELRA, 3 V.S.A. § 962(7), which makes it an unfair labor practice:

> (7) To cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value in the nature of an exaction, for services which are not performed or not to be performed or which are not needed or required by the employer.

The State argues that grievants are trying to cause the State to pay for services "which are not needed or required." Again, this issue was not addressed by the Board because the State failed to raise it in that forum. Accordingly, it is foreclosed from raising it here. See *Moriarty*, 156 Vt. at 165, 588 A.2d at 1065.

Even if the issue had been properly preserved, we would not find that the State would prevail. Although its language is broader, § 962(7) is based on § 8(b)(6) of the National Labor Relations Act, and the federal law provides us with useful guidance in interpreting the state statute. Section 8(b)(6) was enacted to protect against "feather-bedding" or the practice of forcing an employer to pay for services that were not or will not be performed, see *International*

*Union of Op. Eng'rs, #139 v. Carl A. Morse, Inc.*, 387 F. Supp. 153, 161 (D. Wis. 1974), *aff'd*, 529 F.2d 574 (7th Cir. 1976), and has been interpreted very narrowly by the courts, see *NLRB v. International Longshoremen's Ass'n*, 473 U.S. 61, 82-83 n.22 (1985) ("this provision is a 'narrow prohibition,' that does not prohibit payment for work actually done or offered, even if that work might be viewed as unnecessary or inefficient" (quoting *Scofield v. NLRB*, 394 U.S. 423, 434 (1969)). The issue here is not whether holiday work is necessary. The State requires such work, but wants to limit how much it pays for such work through the standby system. Grievants object to the standby system because they believe that the restrictions on their activities are so great that they should be paid full salary for this time. We do not believe that § 962(7) covers this dispute.

Finally, the State argues that grievants did not suffer any actual harm, and, as a result, the Board abused its discretion by providing compensation to grievants. Specifically, the State contends that because grievants never actually worked on the holidays, the remedy provided by the Board constitutes punitive damages and not compensation.

We emphasize that the Board has broad authority to fashion a suitable remedy, and its judgment will be upheld absent an abuse of discretion. See *Vermont State Colleges Staff Fed'n v. Vermont State Colleges*, 157 Vt. 645, 647, 596 A.2d 355, 357 (1991) (mem.). We recognize, nevertheless, that awards should "ordinarily be fashioned to reflect the aggrieved party's actual damages." *Id.*

The normal remedy for loss of opportunity to work is back pay. See *Brooks*, 135 Vt. at 570, 382 A.2d at 209. The purpose of back pay is to make the grievant whole and place the grievant in the position he or she would have been absent a violation. See *In re Butler*, 17 V.L.R.B. 247, 345-46 (1994) (grievant who was improperly dismissed from her job in violation of collective bargaining agreement was entitled to full back pay for period of work missed); *In re VSEA*, 15 V.L.R.B. 71, 91 (1992) (because employer required employees to be reachable on weekend, employees were entitled to back pay commensurate with "standby" duty and not "available" duty); see generally *Angle v. NLRB*, 683 F.2d 1296, 1301 (10th Cir. 1982) ("purpose of a backpay order is to . . . mak[e] an employee whole for any losses suffered because of an employer's unfair labor practice").

The remedy the Board provided was back pay for the holidays grievants would have worked under the prior schedule, less the amount they received for standby duty and for work when they were

called in. It was no more punitive than any other back pay award. It provided grievants compensation for days they did not work because the State denied them the opportunity to work and placed them on standby. As amended, it offset amounts grievants actually worked for holiday coverage. See *In re Merrill*, 157 Vt. 150, 155, 596 A.2d 345, 348-49 (1991).

*Affirmed.*