## New England Partnership, Inc. v. Rutland City School District

[786 A.2d 408]

No. 00-108

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 14, 2001
Motion for Reargument Denied October 29, 2001

*Michael B. Clapp*, Burlington, for Plaintiff-Appellant.

*William H. Meub and Erin Gallivan* (On the Brief) of *Keyser Crowley, P.C.*, Rutland, for Defendant-Appellee.

**Skoglund, J.** In this dispute over payment due under a construction contract, appellant New England Partnership, Inc. (NEPI), architects of a building and remodeling project for appellee Rutland City School District (district), appeals the Washington Superior Court's determination that the amount still owed on the contract to NEPI was $41,059. NEPI argues that the trial court erred in (1) its calculation of the contingent fee amount due pursuant to paragraph six of the addendum to the contract; (2) its determination of the "basic compensation" amount pursuant to paragraph 3 of the addendum agreement; (3) its calculation of the amount of prejudgment interest to be awarded NEPI; and (4) its holding that the Prompt Pay Act, 9 V.S.A. §§ 4001-4009, does not apply to paragraph 6 of the addendum. The district presents three cross-claims as well: that the trial court erred in (1) its determination that NEPI was owed any amount under the contingent fee agreement in paragraph six of the addendum; (2) its calculation of the contingent fee amount pursuant to paragraph six of the addendum; and (3) its award of attorney's fees to NEPI. We agree with NEPI on its first, second, and third arguments, and disagree with its fourth argument as well as the arguments presented by appellee on cross-appeal. We therefore affirm the trial court's decision in part, reverse in part, and remand.

## I. Factual Background

We begin with the facts, as found by the trial court, which are relevant to this appeal. On December 8, 1989, the parties entered into a written agreement in which NEPI would provide the district with architectural services for the building of a new high school and the renovation of other buildings. The agreement was memorialized in a standard American Institute of Architects contract, and incorporated a budget dated November 16, 1989 which had previously been developed by NEPI for the district for bond vote purposes. The agreement specified in paragraph 11.2 the "basic compensation" NEPI was to receive for its services. It stated, in pertinent part, that "basic compensation" shall be computed as "[t]he Stipulated Sum of Eight Hundred Twenty Five Thousand Dollars (Gross Fee of $853,000.00 less $28,000.00 credit for payments for pre-bond services)[.]" On May 16, 1990, the parties agreed to change the compensation portion of the agreement to reflect a cost of $8,804 for insurance, resulting in a new basic compensation fee of $816,196.

In June 1990 the district's Act 250 permit request was denied. In August, when it appeared that it would be some time before the permit would be obtained, NEPI stopped working on the plans for the high school. In January 1991, NEPI informed the district that when the project resumed its fees would need to be increased as a result of the delay.

The Act 250 permit was granted in the summer of 1992, and NEPI resumed work on the drawings. On July 23, 1992, NEPI informed the district of what would be necessary to complete the project, and that completion would cost the district $466,373 in additional fees above and beyond the original contract amount. Despite NEPI's letter providing a description of the bases for these increased costs, the district was upset over this increased amount, finding it difficult to understand why, with the construction drawings 58% complete, so much in additional fees was necessary.

On July 28, NEPI provided a new budget which called for a total project cost of $16 million — substantially higher than the $8.7 million project cost at the time of the bond vote. The district requested that NEPI come up with a fixed fee for the completion of the project, and during the next three months NEPI worked with the district to develop a budget and scope for the project that would be in balance with the district's available funding. On September 14, a budget in line with the available funding was presented to the district, with

construction costs for the high school at $9,002,000, not including a four-percent construction contingency. The budget included a fixed fee for NEPI's services for the entire project at $1,095,585, plus $91,475 in start-up costs. At this time, NEPI indicated that it was willing to address the issue of the near $150,000 in project suspension costs by making payment for them contingent on the project being bid below the budget for construction.

On October 13, 1992, the parties met to negotiate a revised contract, as the original agreement was due to expire. As a result of these negotiations, on November 23, 1992 the parties agreed on the terms of an addendum to the contract. Subsequently, the district contacted a construction company to manage the construction project, and on April 13, 1993 the district and the construction company agreed on a "guaranteed maximum price" (GMP) for the overall project of $10,183,406, including a guaranteed maximum price of $8,759,405 for construction of the high school portion of the project. The construction project agreed to with the construction company differed from that planned by NEPI, as the district specifically eliminated from this later agreement certain items present in the NEPI plans and drawings in order to ensure that the district would have money left over. The project then went out for bidding, and the project, as bid on, resulted in a savings of $342,760.

On July 12, 1993, NEPI submitted a bill to the district for the contingency fee called for under paragraph six of the addendum. The bill referred to $9,001,500 as the amount by which the contingency was to be calculated, and claimed that the GMP, as adjusted for bid savings, was below this amount. The district did not pay the bill for the contingency.

## II. NEPI's Claims on Appeal

NEPI first argues the trial court erred in calculating the suspension contingency amount as described in paragraph six of the addendum. Paragraph six provides:

> Owner agrees to pay Architect additional contingent compensation over that already set out above. The contingent compensation will be 50% of the amount, if any, by which the high school GMP, as adjusted through completion of bidding, is lower than the October 13, 1992, estimate, attached hereto, up to a maximum contingent compensation of $50,000.00. For example, if the adjusted GMP is $50,000.00 lower than the

October 13, 1992 estimate, Architect will receive $25,000.00, if the adjusted GMP is $101,000.00 or more lower than the October 13, 1992 estimate, Architect will receive only $50,000.00. The calculation of the contingent compensation will be made at the completion of bidding and payment shall be made out of initial bond proceeds.

NEPI claims that the trial court erred in adjusting the "high school GMP" upwards, as there was no provision in the addendum for such an upward adjustment.

■ We note initially, as to NEPI's claims that paragraph six does not provide for any upward adjustment of the "high school GMP," that the addendum does not specifically state that the adjustment to be made at the completion of bidding is limited to decreasing the "high school GMP" amount. NEPI's proposed construction of the phrase "as adjusted through completion of bidding" allows only a downward adjustment of the high school GMP. NEPI does not, however, indicate whether this argument was, if ever, presented to the trial court. The trial court's decision makes no reference to whether there was an issue as to the ambiguity of the language NEPI now challenges. It found that portions of paragraph six were ambiguous, but it did not state whether or not it had concluded, or even considered, if the adjustment language at issue here was ambiguous. Accordingly, we will not search the record to determine if the issue was preserved for review. See *In re Wright*, 131 Vt. 473, 490, 310 A.2d 1, 10 (1973) ("This Court is not required nor about to undertake a search for claimed error where it is not adequately briefed, supported by argument, or pointed out in the record before us."). Therefore, absent any indication the argument was raised below, the matter is not before us on appeal. *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal.").

The trial court did conclude that the second portion of the suspension contingency in paragraph six — referring to the "October 13, 1992 estimate" — was ambiguous because of the unresolved question of whether that description referred to the budgeted amount in the estimate with, or without, the 4% construction contingency amount included. However, the trial court did not find or conclude that the first portion of the contingency clause, pertaining to the high school GMP, was ambiguous. Nor did it present any other reasoning or authority

supporting its decision to add back to the "high school GMP" the items it categorized as "items that were eliminated from the guaranteed maximum price contract, but were clearly in the October 13th, 1992 drawings" and "items that although not clearly depicted on either the October 13th, 1992 drawings or specifically named in the budget, are ones that both sides expected through representations and discussions would be components of the building as defined in the addendum contract." The court also refused, when so requested by NEPI, to describe with any particularity the individual components of each of these categories.

"The trial court has a fundamental duty to make all findings necessary to support its conclusions, resolve the issues before it, and provide an adequate basis for appellate review." *Secretary, Agency of Natural Res. v. Irish*, 169 Vt. 407, 419, 738 A.2d 571, 580 (1999); see also V.R.C.P. 52(a); *Roy v. Mugford*, 161 Vt. 501, 507, 642 A.2d 688, 692 (1994). "It is the duty of the court, in making findings of facts, to sift the evidence and state the facts. The purpose of V.R.C.P. 52 findings is to make a clear statement to the parties, and to this Court if appeal is taken, of what was decided and *how* the decision was reached." *Arnold v. Arnold*, 141 Vt. 118, 120, 444 A.2d 890, 891 (1982) (emphasis in original) (citations and internal punctuation omitted). "Findings made under Rule 52, V.R.C.P., are required to report the factual ingredients essential to the disposition." *Standard Packaging Corp. v. Goodrich*, 131 Vt. 57, 59, 300 A.2d 541, 543 (1972).

The trial court's "findings" on the categories of project items eligible for add-back failed to satisfy the requirements of V.R.C.P. 52. The court's refusal to identify the components of the categories it decided to add back deprived the parties an opportunity to challenge the propriety of the court's decision of what should or should not be included in the add-back. This is particularly pertinent to this case, as both sides have claimed error in either what was, or was not, added back.* This omission also deprived this Court the opportunity to meaningfully review the trial court's findings. Therefore, we remand

---

* One of the district's claims on cross-appeal is that the trial court erred in failing to add back category four as well, arguing that this category contains items taken out but contemplated under the October 13, 1992 estimate. However, as the district fails to provide any support for this proposition in the four sentences it devotes to the argument in its brief, we will not address it on appeal. See *State Farm Mut.. Auto Ins. Co. v. Powers*, 169 Vt. 230, 242, 732 A.2d 730, 738 (1999) (noting this Court will not address issues inadequately briefed).

the matter back to the trial court to enter findings identifying the specific items, and their prices, which composed the four add-back categories, and to provide the reasoning supporting making such add-backs to the "high school GMP."

The district argues that the trial court did not need to provide specific findings on what items composed each of the categories of add-backs, citing *Bonanno v. Bonanno*, 148 Vt. 248, 251, 531 A.2d 602, 604 (1987), for the proposition that "[w]hile it is the better practice to articulate the specific facts upon which the ultimate facts are based, it is not reversible error to omit to do so." In *Bonanno*, the trial court failed to provide information on why certain insufficiencies rendered a custody evaluation report's recommendation invalid. *Id.* at 251, 531 A.2d at 604. We held that the evaluation report was not the sole basis for the court's conclusion, and that the report was just one factor considered in making its custody award. *Id.* The present case is clearly distinguishable from *Bonanno*, as the findings omitted here are not simply one of several other factors the court examined in making the conclusion challenged on appeal, and thus *Bonanno* does not apply to the present case.

NEPI further argues that the trial court erred as a matter of law in concluding that NEPI's estimate of the high school guaranteed maximum price was $9,001,500 rather than $9,361,600. The trial court concluded that there was an ambiguity in addendum paragraph six's reference to the "October 13, 1992 estimate" as to whether or not the addendum language includes the 4%, or $360,100, construction contingency amount present in the estimate. The pertinent portion of the estimate reads as follows:

1. ESTIMATED EXPENSES
   A. HIGHSCHOOL/TECHNICAL CENTER
   . . . .
   6. Contingency:  4% x $9,001,500   <u>360,100</u>
   $9,361,600

Upon examining the evidence presented, the court determined that the lower number, without adding in the 4% construction contingency, was the correct amount.

 The issue of whether or not a contract term is ambiguous is a matter of law for the trial court to decide. *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). "Ambiguity will be found where a writing in and of itself supports a different inter-

pretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." *Id.* at 579, 556 A.2d at 84. Extrinsic evidence may be introduced to aid in the construction of a written instrument once an ambiguity has been found. *Id.* at 577, 556 A.2d at 83.

■ The trial court correctly identified that paragraph six makes no mention of whether or not the 4% construction contingency is applicable to the calculation of the suspension contingency. In examining how to resolve this ambiguity, the trial court found that NEPI used the lower figure in its own initial billing for the contingency fee, and that in notes from meetings on January 4 and 5, 1993, NEPI used the lower figure as a reference point for the cost of the building. These findings are sufficient to support the trial court's decision resolving the ambiguity; therefore, we will not disturb its conclusion on appeal. *State v. Austin,* 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996) ("We will uphold the trial court's legal conclusions if reasonably supported by its findings.").

NEPI's next argument is that the court erred in setting at $967,296 the basic compensation payable to it under paragraph three of the addendum, and, as a result, the district received a double credit for $28,000 in prebond work performed by NEPI. Paragraph three reads as follows:

> The Architect's total compensation under Article 11.1 & 11.2 is amended from $853,000.00 to $1,004,100.00. All sums paid Architect to date will be treated as compensation under this portion of this Agreement and credited against the $1,004,100.00.

The December 8, 1989, contract called for "basic compensation" for basic services in the amount of $825,000, an amount arrived at by subtracting $28,000 "credit for pre-bond services" from the "gross fee" of $853,000. Also, on May 16, 1990, the parties agreed to change the compensation portion of the agreement to reflect a cost of $8,804 for insurance, which further reduced the basic compensation amount. The court concluded that paragraph three of the addendum was ambiguous as to whether or not these credits were to be subtracted from the new amount. The court stated that "[t]here is something of an ambiguity there" and resolved this ambiguity in favor of the district. It stated that "the most reasonable way to read the addendum together with the original contract is simply to replace the $853,000 number with the

$1,004,100 number." The court further concluded that the effect of the addendum was to change the basic compensation amount to $1,004,100, subject to a reduction of $28,000 credited in paragraph 11.2.1 of the December 8, 1989 contract, as well as the $8,804 change reflecting the cost of insurance, resulting in a basic compensation amount of $967,296.

"A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation." *Isbrandtsen*, 150 Vt. at 577, 556 A.2d at 83. If a court finds a writing to be ambiguous, "the proper interpretation becomes a question of fact, to be determined on all relevant evidence." *Kipp v. Chips Estate*, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999).

> We will not set aside a trial court's findings unless clearly erroneous, nor disturb its conclusions if they are reasonably supported by the findings. Findings are viewed in the light most favorable to the judgment, disregarding modifying evidence, and will not be disturbed merely because they are contradicted by substantial evidence; rather, an appellant must show that there is no credible evidence to support the finding.

*Agency of Natural Res. v. Glens Falls Ins. Co.*, 169 Vt. 426, 432, 736 A.2d 768, 772 (1999) (citations omitted).

■ Extrinsic evidence may be introduced to aid in the construction of a written instrument once an ambiguity has been found. *Isbrandtsen*, 150 Vt. at 577, 556 A.2d at 83. In this case, examination of the October 13, 1992 estimate makes clear that the trial court's construction of the addendum and contract will result in the district receiving a double credit for $28,000 worth of prebond services. Under the trial court's construction, the credit is first received by the district in the October 13, 1992 estimate's calculation of the $1,004,100 total compensation amount, as that number includes the "prebond credit" of $28,000. The second credit is manifest in paragraph 11.2.1 of the December 8, 1989 contract when the original $853,000 amount is replaced, per the trial court's construction of the addendum, with $1,004,100, because this paragraph requires the additional subtraction of "$28,000 credit for payments for pre-bond service."

■ The district makes no argument in support of the trial court's interpretation of paragraph three of the addendum — it simply states

that appellant's argument is without merit. After examining the October 13, 1992 estimate, it does not appear that the trial court's conclusion is reasonably supported by the findings. The trial court made no findings on the issue of how to construe the contract. It simply concluded that there was an ambiguity, took evidence on the issue, and then resolved the issue in favor of the district — all without giving a factual basis for so holding. It did note that the $1,004,100 amount is available in the estimate, even though "[i]t is only available by adding and subtracting certain numbers that require [a] certain amount of sophistication and understanding of that budget." However, the estimate also specifically indicates the $28,000 prebond credit was already taken out in the calculation of the estimated expense of the design of the high school portion of the project, and there is no credible evidence in the record supporting a conclusion contrary to this evidence. Therefore, we disagree with the trial court's conclusion that, upon replacing "$853,000.00" in paragraph 11.2.1 of the contract with "$1,004,100.00," the district is also entitled to the additional $28,000 credit provided in paragraph 11.2.1.

■ NEPI's next argument is that the trial court erred in calculating the interest award of $8,640, claiming that the court abused its discretion and erred as a matter of law when it calculated the interest at the rate of 6% "rather than the legal rate of interest of 12%." 9 V.S.A. § 41a(a) provides that "the rate of interest . . . for forbearance or use of money shall be twelve percent per annum computed by the actuarial method." We recognized in *Greenmoss Builders, Inc. v. King*, 155 Vt. 1, 8, 580 A.2d 971, 975 (1990), that "[i]nterest is a legal right of the plaintiff. When a debt becomes payable, if the contract does not stipulate a rate of interest, the statutory or legal rate applies." "Reversal of the court's prejudgment interest award is warranted only if the method of calculation chosen was so 'irrational as to amount to an abuse of discretion.' " *Remes v. Nordic Group, Inc.*, 169 Vt. 37, 41, 726 A.2d 77, 80 (1999) (citing *In re Merrill*, 157 Vt. 150, 154, 596 A.2d 345, 348 (1991)). In the present case, neither side argues that the contract contained a provision for prejudgment interest awards or any other interest rate provision applicable in this situation. Therefore, the trial court's application of a 6% interest rate, in the absence of any mention of interest rates in the contract itself, and contrary to the clearly-enumerated statutory rate of 12%, constitutes an abuse of discretion warranting reversal.

NEPI's final argument is that the trial court erred in holding that the Prompt Pay Act (PPA), 9 V.S.A. §§ 4001-4009, does not apply to paragraph six of the addendum. The PPA was enacted in 1991, and applies only to contracts entered into on or after January 1, 1992. See *id.* The contract at issue in this case was entered into on December 8, 1989, and modified by the addendum agreement on November 23, 1992. The question raised is whether the PPA therefore has effect on the contract, or the addendum, or both.

NEPI states that the PPA applies to paragraph six of the construction contract, as that paragraph "is completely independent of any of the provisions or terms contained in the 1989 Agreement." It claims that this paragraph reflects a settlement agreement reached by the parties regarding costs incurred when the project was suspended because of Act 250 problems, and is "not merely an alteration of provisions contained in the 1989 Agreement" but is "instead an entirely new agreement reached in settlement." We disagree. It is a generally understood principle of contract construction that "[t]he modification of a contract results in the establishment of a new agreement between the parties which *pro tanto* supplants the affected provisions of the original agreement while leaving the balance of it intact." *Beacon Terminal Corp. v. Chemprene, Inc.*, 429 N.Y.S.2d 715, 717-18 (App. Div. 1980) (citing in part 6 Corbin, Contracts § 1293 (1962)). Thus, the addendum provision is not itself a stand-alone agreement, and NEPI's argument for application of the PPA fails.

### III. The District's Claims on Cross-Appeal

The first claim by the district is that the condition precedent to payment of the contingency fee described in paragraph six of the addendum was never met. In support of this position, the district claims that the district provided testimony showing that the intent of the district was to pay the contingency only if the district received the school as contemplated on October 13, 1992, and, since the school as built deviated from that contemplated design, the condition was not met.

"We interpret the contract according to its terms and the parties' intent as expressed in the contract language." *Suchoski v. Redshaw*, 163 Vt. 620, 622, 660 A.2d 290, 292 (1995). From the plain meaning of the language of paragraph six, there is no expression that the intent of the parties was to attach the satisfaction of the contingency to the actual building received. The language provides that the contingency is

met if "the high school GMP, as adjusted through completion of bidding, is lower than the October 13, 1992 estimate," and makes no mention of the finished project as such would relate to the contingency being met. We therefore reject the district's argument.

The district's second claim is that the trial court erred in awarding attorney's fees to NEPI because the award was tied to finding a contingency, and because the trial court stated that under the circumstances NEPI was entitled to attorney's fees. As we disagree with the district that the paragraph six contingency was not met, we address only the claim that the court erred in "finding" that the contract entitled NEPI to fees in this case. The contract provides that, should a party breach the agreement, the party "forced to take any action to collect sums due it . . . may also recover all costs of collection (including court costs and reasonable legal fees)." "We will not disturb the trial court's findings of fact unless they are unsupported by the evidence or clearly erroneous." *State v. Zaccaro*, 154 Vt. 83, 86, 574 A.2d 1256, 1258 (1990). By arguing that the court's statement that NEPI is entitled to attorney's fees in this case is the equivalent of reading the contract as mandating attorney's fees in the event of a breach, the district displays a misunderstanding of the word "entitle." To be entitled to fees is not only to have a mandatory right to such, but also to "furnish with proper grounds for seeking or claiming." Black's Law Dictionary 477 (5th ed. 1979). In light of the trial court's finding that the contingency was owed to NEPI, its conclusion that NEPI was also entitled to attorney's fees under the contract was supported by the evidence.

*Affirmed in part, reversed in part, and remanded.*