**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| | } | |
| **Appeal of Leikert** | } | **Docket No. 59-3-05 Vtec** |
| | } | |
| | } | |

**Decision**

Michael and Mary Leikert (Appellants) appealed from a decision of the Town of Morristown (Town) Development Review Board (DRB) dated March 8, 2005, denying their application for conditional use approval for an automobile and small engine repair home business on Appellants' 0.75-acre lot located at 82 Howard Street in the Town's High Density Residential zoning district. This action is an on-the-record appeal, since the Town has adopted and implemented the procedures necessary for such appeals pursuant to 24 V.S.A. § 4471(b). Appellants are represented by Paul Gillies, Esq.; the Town is represented by Will S. Baker, Esq. Appellants submitted a "memorandum on the appeal" seeking a new hearing or an opportunity to be heard and present new evidence to the DRB. The Town has moved for summary judgment, seeking denial of the appeal. Appellants oppose the Town's motion.

**A.      Procedural Background.**

This appeal has a somewhat convoluted procedural history. The DRB first denied Appellants' application in April of 2003, but failed to make a record of the proceeding, due to a mechanical failure of the audio tape recording system. This Court remanded the matter to the DRB for another hearing. The DRB held the second hearing on July 17, 2003, for which a transcript was prepared, and denied Appellants' application on the same day. The DRB also took a site visit, but failed to make a record of its observations. The DRB based its 2003 denial on its conclusion that the proposed

use would adversely affect traffic and the residential character of the neighborhood, and thus would not conform to all of the conditional use criteria in the Town's zoning bylaws.

This Court, in a decision dated May 3, 2004, upheld the DRB's July 17, 2003 denial, finding that substantial evidence existed in the record supported the DRB's findings. In doing so, this Court examined the record and expanded upon the factual findings made by the DRB. Mr. and Mrs. Liekart then appealed to the Vermont Supreme Court, which vacated the decisions of both the DRB and this Court, and remanded the matter back to the DRB "for additional factfinding and, if necessary, another hearing." In re Appeal of Leikert, Docket No. 2004-213, at 1 (Vt. Supreme Ct., Nov 10, 2004) (three-justice panel).

In explaining that vacating the prior decisions and remanding back to the DRB was necessary, the Supreme Court emphasized that the "purpose of findings [issued by a DRB in an on-the-record appeal] is to make a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached." Id. at 2 (citation omitted). The Court went on to note that "[i]n short, 'the Legislature intended that an appealing property owner would get reasons, as well as a result, when a zoning board . . . rules against him.'" Id., quoting Potter v. Hartford Zoning Bd. Of Adjustment, 137 Vt. 445, 447 (1979).

On remand from the Supreme Court, the DRB again denied Appellants' application, in a decision dated March 8, 2005.[1] The DRB did so without noticing

---

[1] It appears that the DRB, in its 2005 decision, relied to some extent on the proceedings held in April of 2003, for which no tape or transcript was made. See Town's Mot. for Summ. J., at 2 ("On remand, the DRB decided that the existing record was sufficient, as there had been two separate sets of hearings held previously regarding this application."); Aff. of DRB Chair Gary Nolan, Attach. A to Town's Mot. for Summ. J., at 1 ("the DRB determined that an additional hearing was not necessary, as there had been two hearings on the application previously."). Such reliance appears to be problematic, both because of the hazards of relying on the persistence of memory of a hearing that occurred two years previously and for which no audio or written record exists, and because the April 2003 DRB decision is a legal nullity, as it was vacated and remanded by this Court in a judgment order dated June 16, 2003, in Docket No. 52-4-03

another hearing[2] or take any new evidence. The DRB also chose to not give Appellants or other parties an opportunity to submit new evidence, legal argument or the opportunity to argue for or against holding another hearing. The DRB did, however, make new factual findings and conclusions of law to support its denial. Some of the new findings and conclusions are internally inconsistent or directly contradict earlier findings and conclusions made on the same record, as discussed below.

## B. Discussion.

A home business is a conditional use in all residential districts in Morristown Zoning Bylaws (Bylaws) § 462, and must comply with the requirements of Bylaws § 632 (conditional uses, general standards) and § 462 (home businesses, requirements). In its March 8, 2005 decision, the DRB concluded that Appellants' application must be denied because under Bylaws § 632 "the use would adversely affect the character of the area, adversely affect traffic in the area, and [therefore] does not conform with all bylaws," specifically Bylaws §§ 632.2 (character of area) and 632.3 (traffic). The DRB also concluded under § 462 that the use would create "objectionable noise and smoke" (§ 462.4) and an increase in traffic volume (§ 462.5).[3]

---

Vtec, for a new hearing and decision "as if no hearing had previously occurred and no decision had previously been rendered." Id.

[2] Appellants complain that the DRB rendered its 2005 decision "without allowing [Appellants] to participate in any way in this process . . . ." Appellants' Mem. dated Aug. 4, 2005, at 2. The record does not reveal how the DRB made its new factual determinations and legal conclusions without noticing some meeting, whether it was a public meeting or deliberative session.

[3] See Conclusion of Law (2)(E) in the March 8, 2005 DRB Notice of Decision, at 4–5. This legal conclusion appears to be deficient, since the legal standard in Bylaw § 462.5 is whether any traffic increase caused by the proposed use "would be in greater volumes than would normally be expected in the neighborhood." Bylaw § 462.5. The DRB concluded that the proposed use would cause a traffic "increase", but did not explain that it found, or how it found, that the increase "would be in a greater volume than would normally be expected in the neighborhood."

In reaching this conclusion, the DRB may have based its decision on its factual finding of adverse effects under the conditional use general standards of § 632. But the reader is left to speculate; the DRB decision is not clear in this regard.

The DRB concluded that the proposed use will adversely affect the character of the area (Bylaws § 632.2) by increasing noise and odors in a quiet residential area. This conclusion was apparently based on Finding 10, which states that neighbors have experienced noise, fumes, and smoke resulting from Mr. Leikert's work on automobiles on his property, and presumably is also based upon the DRB's conclusion under Bylaws § 462.4 that the home business "will create objectionable noise and smoke." However, the DRB also concluded under Bylaws § 633.2 that the proposed use "will not result in undue water, noise, or air pollution." Furthermore, in its 2003 decision on the same evidence, the DRB concluded under Bylaws § 462.4 that "there will be no objectionable noise, vibration, odor, smoke, dust, electrical disturbance, heat or glare produced by the home business."

While it may be possible that noise and odors could simultaneously be "objectionable" and "not undue," thus reconciling the DRB's 2005 conclusions under Bylaws §§ 462.4 and 633.2, we are at a loss to explain how the same evidence, with no new noticed hearing or opportunity to present new evidence taken after the Supreme Court remand, could lead to opposite conclusions under § 462.4 in the 2003 and 2005 DRB decisions.[4]

We also note that the evidence in the record reveals that the neighbors' past experiences of objectionable noise, fumes, and smoke was due to Appellants' past, unpermitted work on automobiles with the garage door open, and not as part of the proposed home business which forms the basis of the pending application. Appellants' proposed home business will be conducted inside a garage with the garage door closed, and will incorporate a "soundproof room" for the air compressor and  a "vacuum

---

[4] We also note that the Town, in its Memoranda dated August 5, 2005 and September 7, 2005, refers to the findings made by this Court in its May 3, 2004 Decision. But it was those very factual findings that the Supreme Court referenced in vacating this Court's 2004 Decision and remanding this application back to the DRB. We therefore believe it inappropriate to reference the vacated findings made by this Court in 2004.

pump exhaust system" to vent exhaust through the roof of the garage.  The record appears absent of any facts that provide any foundation to support the DRB's apparent, but unstated, finding that Appellant's proposed use, with its soundproofing and exhaust system improvements, will result in objectionable noise, fumes, and smoke emanating from Appellants' property.

The reasoning behind the DRB's conclusions under Bylaws §§ 462.4 and 633.2 is therefore unclear and inadequate for an on-the-record decision.  Section 1209(b) of the Municipal Administrative Procedures Act, 24 V.S.A. §§ 1201–1210, requires that "[f]indings of fact shall explicitly and concisely restate the underlying facts that support the decision.  They shall be based exclusively on evidence [in] the record in the contested hearing."  24 V.S.A. § 1209(b).  See 24 V.S.A. § 1209(c) ("Conclusions of law shall be based on the findings of fact."); see also New England P'ship v. Rutland City Sch. Dist., 173 Vt. 69, 74 (2001) ("The purpose of . . . findings is to make a clear statement to the parties [and the Court in the event of an appeal] of what was decided and how the decision was reached.") (emphasis in original, internal quotation and citation omitted).

The DRB also concluded that the proposed use will adversely affect traffic on roads and highways in the vicinity (Bylaws § 632.3), based upon "limited visibility for vehicles entering or exiting the home business' driveway at the crest of a steep hill on Washington Highway," and "the effect of [an increased volume of vehicles] on traffic already passing the roadways."[5]  The DRB conclusions under § 632.3 closely follow this Court's conclusions in our vacated decision dated May 3, 2004.[6]

---

[5] In its motion for summary judgment, the Town states that the DRB "found in Conclusion 2(E) [under Bylaws § 462.5] that the use would generate traffic in greater volumes than would normally be expected in the neighborhood."  Town's Mot. for Summ. J. at 7.  However, the DRB's decision does not make that conclusion, at 2(E) or anywhere else.  Conclusion 2(E) states that "the business will create an increase in traffic volume," but does not conclude that the increase will result in greater traffic volume than would normally be expected in the neighborhood.  Indeed, it appears that the DRB disavowed that latter conclusion in its discussion of § 632.3, where it stated that "[w]hile the increase in volume of traffic of the

The DRB's concerns regarding adverse effects on traffic appear to be based on Findings 11 through 15, and in particular Finding 14, which states that there have been two unreported accidents on Washington Highway, near the proposed use;[7] pedestrian visibility near the driveway for the proposed use is problematic; and flatbed trucks or other trucks delivering vehicles to the property have to either back in or out onto Washington Highway, potentially stopping traffic in both directions.

The last of these three concerns appears to be the most substantial, as the hazard caused by trucks backing into the driveway from Washington Highway is compounded by the poor visibility over the crest of the hill to the west. However, Appellants now assert that "all backing and turning [will] occur on their property, so that every vehicle leaving the site will be facing out, without the need to stop traffic." Appellants' Mem. on the Appeal, at 5. Appellants also now assert that they are prepared to present evidence of more limited traffic impact, i.e., only two car appointments per day rather than two to four per day.

These proposed revisions by Appellants are appropriate subjects for further factfinding by the DRB. In fact, an applicant's municipal land use application will often evolve as a DRB lets its concerns be known regarding a project. The fact that this proceeding is on-the-record does not negate the benefits of such an evolutionary process, including improved relations between the DRB and applicants and projects

proposed use may be acceptable, the effect of those vehicles on traffic already passing the roadways would be adversely affected." Furthermore, in its 2003 decision on the same evidence, the DRB concluded under § 462.5 that "the home business will not generate traffic in greater volumes than would normally be expected in the neighborhood."

The record is silent as to what facts, revisited in 2005, caused the DRB to reach an opposite conclusion from that reached in 2003. This change in legal analysis is not improper, in and of itself. But the absence of any explanation as to why an opposite conclusion was reached is an example of the very lack of notice that caused the Supreme Court to remand this matter in 2005.

[6] See footnote 4, above.

[7] There is no explanation in the record as to whether there is any connection between the reported accidents and Appellants' current or proposed use of their property.

that are finely tailored to address the DRB's concerns. Those benefits speak to the appropriateness of another hearing which would allow the applicants to respond to the DRB's concerns by amending their proposed project.

Because the decision under appeal is both internally inconsistent and lacks sufficient notice of the basis for its conclusions (including conclusions that contradict the Board's previous decision on the same evidence), we cannot affirm the decision and must remand the matter with a recommendation that the DRB hold a new hearing and provide Appellants with notice and an opportunity to participate, including the taking of new evidence. We repeat the directive of the Supreme Court that the decision to hold a new hearing is discretionary with the DRB, but if it chooses not to hold such a hearing, then it must afford the Applicant and other parties with notice of its public or deliberative sessions and afford them an opportunity to submit new evidence by affidavit or stipulation.

Like the Supreme Court, we recognize that all Vermont municipal panels are for the most part made up of lay people who are asked to act as judges while having little experience or training in adjudicative matters. Some direction to the DRB may therefore be helpful. When a DRB sits on-the-record to render a decision on an application, it sits as a judge, not as a party opposing the applicant. It must impartially judge the facts and render a clear, consistent, understandable decision based on its findings. Absent a clear showing of bias, we presume good intentions on the part of the Board. We note, however, that bias is not limited to the feelings Board members may harbor toward an applicant or a project, but also includes the understandable, yet impermissible desire to maintain and strengthen one's previous position.

On remand, the Board must not begin by taking a position for or against the project, but rather must act as an impartial decision maker. When a reviewing court vacates a DRB decision, it is as though that decision did not exist. Remand should

result in a fresh look at the evidence thus far presented, as well as any new evidence presented, including amendments an appellant's proposed project.

The DRB must also take on the remanded task of rendering legal conclusions with a fresh eye to the new findings it makes. We caution the DRB that evidence of bias will result in yet another appeal. If any Board members doubt their ability to judge the application impartially, they ought to recuse themselves so as to remove any perception of bias from the Board's decision after remand.

Accordingly, based on the forgoing, we VACATE the March 8, 2005 decision of the DRB and REMAND the matter to the DRB with an instruction that the DRB either hold a new hearing or otherwise provide all parties with an opportunity to submit new evidence. The Town's motion for summary judgment is also denied. The consequence of these decisions is that the appeal pending before this Court is concluded.

Done at Berlin, Vermont this 12th day of April, 2006.

_____
Thomas S. Durkin, Environmental Judge