STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Walsh d/b/a Deerwood Estate | } | Docket No. 122-6-09 Vtec |
| Conditional Use Application | } | |
| (Appeal of Sapir, <u>et al.</u>) | } | |
| | } | |

<u>Decision and Order on Pending Motions</u>

Appellants Donald L. and Janet Sapir (Appellants Sapir), Paul and Connie Miller (Appellants Miller), and William R. and Judith A. Hancox (Appellants Hancox) appealed from a decision of the Zoning Board of Adjustment of the Town of Bridport (ZBA), granting Appellee-Applicant Joann Walsh, d/b/a Deerwood Estate (Applicant) conditional use approval to operate a wedding and events business on residential property she owns with her husband, Appellee James Briggs. Appellants William R. and Judith A. Hancox have appeared and represent themselves. Appellants Paul and Connie Miller are represented by George Vince, Esq. Appellant Donald L. Sapir is a lawyer not admitted in Vermont; he and Appellant Janet Sapir have appeared and represent themselves. Appellees are represented by Kevin E. Brown, Esq. The Town is represented by Karl W. Neuse, Esq. and Benjamin W. Putnam, Esq. Interested Persons Stephen J. and Karan D. Cutler have appeared and represent themselves, but have not taken an active role regarding the present motions.

Appellants Sapir, Appellants Miller, and Appellants Hancox have each filed an individual Statement of Questions with the Court pursuant to V.R.E.C.P. 5(f).[1]

---

[1] Appellants Sapir and Hancox used Roman numerals to number the questions in their Statements of Questions. This decision will refer to each question by its corresponding Arabic numeral, for ease of reference. The Hancox Statement of Questions explicitly incorporated the Sapir Statement of Questions in its entirety, as well as putting forth

1

Appellants Miller have filed a "Motion to Dismiss for Lack of Jurisdiction." However, although their motion is styled as one to dismiss the appeal, Appellants Miller have essentially moved to vacate and remand the ZBA decision due to procedural problems during the ZBA proceedings, and the Court will treat the motion as one to vacate and remand.

The Town has moved to dismiss or to clarify certain questions in all three Statements of Questions. In addition, Appellants have all moved for summary judgment on two issues: whether the application before the Court is an impermissible successive application, and whether the proposed wedding events use falls within the definition of a "home-based business" under the Town of Bridport Zoning Regulations (Zoning Regulations).

The following facts are undisputed unless otherwise noted.

Appellees own three parcels of property in Bridport, Vermont, all of which are involved in the proposal on appeal. Lot 1 (the B&B lot), located at 8053 Vermont Route 125 (with frontage on the westerly side of Route 125), is approximately 3.67 acres in area and contains a house, a garage, and a barn; this property is also known as Deerwood Estate. Applicant operates a three-bedroom bed-and-breakfast in the house on the B&B lot. The bed-and-breakfast business received conditional use approval and a zoning permit in April of 2009, and is not at issue in the present appeal.

Lot 2 (the Lakeshore lot), with frontage on Lake Champlain and located between the lake and B&B lot, is approximately 10.39 acres in area and contains no finished structures.[2] Access from Route 125 to the Lakeshore lot is via a driveway[3] running

two additional questions; this decision will refer to each of the incorporated questions by the "Sapir" question number only, also for ease of reference.

[2] Lot 2 contains a "capped foundation," installed or constructed in 2007 or 2008.

[3] No information has been provided to the Court regarding the scope of the right-of-way over the B&B lot for the Lakeshore lot, nor whether it was approved in connection with any prior subdivision approval.

along the southerly boundary of the B&B lot.[4]

Lot 3 (the Field lot) is located across Route 125 from the B&B lot, with frontage on the easterly side of Route 125. The Field lot contains approximately 23.87 acres and is undeveloped. At least the Lakeshore lot, the B & B lot, and the westerly portion of the Field lot (to a depth of 450 feet east of Route 125), are located within the Shoreland Planned Residential Zoning District. See Zoning Regulations § 906(A).

Appellants Sapir own lakeshore property adjacent to Appellees' property to the north. Appellants Hancox own lakeshore property adjacent to Appellees' property to the south. Appellants Miller own lakeshore property to the south of and separated from the Hancox property by another property (not involved in the present appeal). Interested Parties Cutler own lakeshore property adjacent to and to the south of the Miller property.

On March 11, 2009, Applicant submitted Permit Application No. 09-05 (the March application), seeking conditional use approval to operate both a bed-and-breakfast and a wedding and other events venue on the B&B lot only, which up to that time had been used as a single-family residence. The March application included a sketch plan or diagram showing the house, garage, and barn locations, but not showing any proposed sizes or locations of tents, portable toilets, or parking.

Three members of the five-member ZBA were present for the April 22, 2009 ZBA hearing on the March application. As reflected in the minutes of the April 22, 2009 ZBA hearing (April 2009 ZBA Minutes), Ms. Walsh proposed to operate a three-bedroom bed-and-breakfast, and proposed that the house could be used for indoor events, such as meetings, for up to twenty-five participants. She proposed to set up tents on the

---

[4] Applicants purchased the B&B lot and the Lakeshore lot in 2001 as a single parcel of property. That 14.06-acre parcel was later subdivided into what are now the B&B lot and the Lakeshore lot. No party has provided any application for or decision on the subdivision in connection with the present motions.

3

property to hold weddings and other events of "up to 175 guests." April 2009 ZBA Minutes, at 1. She proposed a "firm shut-off time of 10 p.m." Id. at 2.

Although the application was filed only for the B&B lot, Ms. Walsh stated at the hearing that the Field lot could be used to park cars "if needed for an event," and that weddings could be held on the Lakeshore lot closer to the shoreline. Id. at 1. At the April 22, 2009 hearing, she proposed to occupy a fourth bedroom in the house on the B&B lot, but also stated that she would be occupying the house on the Lakeshore lot "when that home [would be] constructed." Id. Ms. Walsh stated that she "hoped to book events for all weekends throughout the summer months as long as the weather permitted." Id. at 2. Nothing in the minutes reflects what Applicant or the ZBA then considered as constituting "the summer months."

At the April 22, 2009 meeting, all three ZBA members participating in that hearing first voted to deny approval for the "B&B including the wedding venue, based on complaints of noise and other." Id. at 2. They then voted to grant conditional use approval for the bed-and-breakfast on the B&B lot, "without the wedding and events," on a vote of two in favor and one abstention. Id. at 2. No party appealed this decision and it became final. See 24 V.S.A. § 4472(d).

The next day, April 23, 2009, Applicant submitted Permit Application No. 09-11, seeking conditional use approval to operate a "wedding and events venue" on all three of Appellees' lots, rather than only on the B&B lot. Appellees later submitted two letters to the ZBA further explaining the revised proposal, one on May 13, 2009, and the second on May 27, 2009, as well as a proposed landscaping plan dated May 26, 2009.[5]

---

[5] This plan appears to have been drawn up as a landscape design on behalf of the project, although it was only submitted to the Court as Exhibit 6 to the Sapir Motion for Summary Judgment. It shows the location of a tent, the location of parking for 67 vehicles northerly of the driveway on the B&B lot, the location of five portable toilets between the garage and the parked cars, and the location of a 350-foot-long double row of unspecified trees between the driveway and the southerly boundary of the B&B lot.

This decision will refer to the April 23, 2009 application and the May 13, 2009 letter together as "the second application," as apparently the public hearing on this application was held on May 15, 2009. The May 27, 2009 letter, which presented Appellees' arguments in relation to the conditional use standards and to issues raised during the hearing, and the May 26, 2009 landscaping plan, will be referred to specifically by date.

Applicant's second application proposed to limit the types of events held on the property solely to wedding-related events, held during the months from May through October, including "outside tented weddings, rehearsal dinners and post-wedding brunches" and wedding receptions. Appellees' May 13, 2009 Letter, at 1–2, 3. They defined each "event" as including "any one or a combination of the following: a rehearsal dinner, a wedding ceremony, a reception, a post-wedding brunch." Id. at 2. The second application proposed to cap the number of outdoor events per year at twelve, and to limit the number of guests at eight of the events to 125 guests, and at the remaining four events to 100 guests. The second application proposed that "only a wedding reception be allowed to have amplified music," and to prohibit "live amplified bands." Id. The second application proposed to require that "all music be directed towards a side of the tent that will remain closed during the event and will serve to further absorb and deaden sound." Id.

The second application also proposed that all vendors be licensed and insured in Vermont, that paper products not be used at any event (in order to reduce concerns about litter), and that all caterers be responsible for complete clean-up and disposal at the conclusion of each event. It proposed that tents will be erected and removed during "normal business hours," and that portable toilets will be placed adjacent to the garage at the front of the property so as to as to completely screen them "from the neighbors' view." Id. The second application proposed to require that guests and vendors park on the northerly side of the existing driveway that runs along the B&B lot and the

5

Lakeshore lot and in the existing parking area on the B&B lot. It also proposed to require that cars along the drive "be parked at an angle facing northeast, so as to eliminate headlights shining on [the] neighbors' houses at night." Id.

No party has provided the minutes of the May 15, 2009 public hearing on the second application. Paragraph 6 of the June 17, 2009 written decision states that the hearing was "recessed to deliberation and continued" on May 27, 2009, was recessed to a site review on May 30, 3009, and was recessed to the "Bridport Town office regular meeting" on June 17, 2009. From this recitation, and without the minutes of the May 15, 2009 public hearing or any of the interim meetings, the Court cannot determine whether the public hearing was adjourned to any of the interim dates, or whether the date and place of the adjourned hearing was announced at the May 15, 2009 hearing or at any of the interim meetings. See 24 V.S.A. § 4468.

The June 17, 2009 decision states that five members of the ZBA were present for the May 15, 2009 hearing. The ZBA appears to have designated three of its members as a so-called "deliberations committee"; from the June 17, 2009 minutes of that committee, it also appears that those three members held a site visit at Appellees' property on May 30, 2009, referred to in the minutes as "the May 30, 2009 deliberation at the Walsh/Briggs property." In a vote taken in the evening of June 17, 2009, the same three ZBA members voted unanimously to approve the conditional use application; a written decision was issued, also dated June 17, 2009 (June 2009 ZBA Decision), signed by the three voting members.

The written decision granted conditional use approval for the wedding events venue as a "home based business," subject to the following conditions: "12 events per year (each event could but not necessarily consist of more than one day)," and "as above: licensed vendors[,] proper sanitation[, and] adequate off-road parking." June ZBA Decision, at 4. Appellants brought the present appeal.

6

<u>Appellants Miller's Motion to Vacate and Remand</u>

Appellants Miller argue that the Court lacks jurisdiction because the ZBA failed to post proper notice of the public hearing regarding Applicants' second permit application, as required by 24 V.S.A. § 4464(a)(1)(B). Section 4464(a)(1)(B) requires proper notice of the public hearing to be posted "in three or more public places within the municipality in conformance with the location requirements of 1 V.S.A. § 312(c)(2), including posting within view from the public right-of-way most nearly adjacent to the property for which an application is made." Under 1 V.S.A. § 312(c)(2), the ZBA is required to post notice for special meetings "in or near the municipal clerk's office and in at least two other public places in the municipality."

In interpreting what is required under a statute, courts first "look to the statute's plain meaning when the language is clear and unambiguous." <u>Kapusta v. Dep't of Health/Risk Mgmt.</u>, 2009 VT 81, ¶ 8. Appellants argue that 24 V.S.A. § 4464(a)(1)(B), read together with 1 V.S.A. § 312(c)(2), requires posting in three public places in addition to posting at the property at issue, totaling four locations. This is not what the plain language of either statute requires. The legislature's use of the word "including" plainly states that the "posting within view from the public right-of-way most nearly adjacent to the property for which an application is made" is one of the three required public postings. In addition, because of the statutory reference to 1 V.S.A. § 312(c)(2) in 24 V.S.A. § 4464(a)(1)(B), one of the three required public postings must also be "in or near the municipal clerk's office." Therefore, reading the two statutory provisions together, the ZBA was required to post notice in a total of three public places: one at the property within view of a public right-of-way, one at the municipal clerk's office, and the last in one other public place.

On April 23, 2009, notice of the May 15, 2009 public hearing regarding the application on appeal was posted at the Walsh property within view of the nearest public right-of-way (Route 125), at the municipal clerk's office, and at Broughton's Farm

7

Supply. June ZBA Decision, at 1. The posting was adequate under both 24 V.S.A. § 4464(a)(1)(B) and 1 V.S.A. § 312(c)(2); neither remand of this matter nor vacating or "dismissal" of the ZBA decision is required. Accordingly, Appellants Miller's motion is DENIED.

### Town's Motion to Dismiss and/or Clarify

The Town has moved under V.R.E.C.P. 5(f) to dismiss or to clarify various issues in each of the Statements of Questions submitted by Appellants. To the extent possible, this decision groups related questions together.

### Sapir Question 7

Sapir Question 7 addresses the inadequacy of the second application. Specifically, Appellants assert that it was not complete and was not submitted to the ZBA 25 days prior to the May 15, 2009 hearing, as required by § 352 of the Zoning Regulations, and that the application and letters that were submitted contained several "deficiencies."

Although Appellants Sapir are correct that an applicant must satisfy the requirements enumerated in § 352 of the Zoning Regulations, this is a de novo appeal. It is the Court's responsibility independently to determine whether the application meets the requirements of the Zoning Regulations, including those of § 352, applying the standards applicable in the tribunal appealed from. See V.R.E.C.P. 5(g) ("In an appeal by trial de novo, all questions of law or fact as to which review is available shall be tried to the court, which shall apply the substantive standards that were applicable before the tribunal appealed from."); see also, e.g., In re: Simpson Dev. Corp., No. 54-3-05 Vtec, slip op. at 2 (Vt. Envtl. Ct. June 27, 2006) (Durkin, J.) ("[D]e novo appeals require the reviewing court to hear '[a]ll the evidence anew' and to render its own factual determinations 'as though no decision had previously been rendered.'" (quoting

8

In re Poole, 136 Vt. 242, 245 (1978)).  Accordingly, Sapir Question 7 must be DISMISSED.


Sapir Questions 1(e), 1(f), and 31, and Miller Question 8

Sapir Questions 1(e), 1(f), and 31 address the 2006 Zoning Regulations, which superseded the 2002 Zoning Regulations.  Miller Question 8 asks whether "the Town fail[ed] to notify interested parties about the regulations under which the application was being reviewed."  These questions essentially ask this Court to determine whether the 2006 Zoning Regulations were or were not properly adopted, and, if they were not, to remand the application to be considered by the ZBA under the 2002 Zoning Regulations.

Vermont law provides that "[n]o person shall challenge for purported procedural defects the validity of any plan or bylaw as adopted, amended, or repealed . . . after two years following the day on which it would have taken effect if no defect had occurred."  24 V.S.A. § 4483(b).  The Bridport Zoning Regulations were approved on November 13, 2006, and took effect twenty-one days later on December 3, 2006.  See 24 V.S.A. § 4442(c) (stating that a bylaw "shall become effective 21 days after adoption").  The Sapir Notice of Appeal was filed on June 30, 2009, and the Miller Notice of Appeal was filed on July 6, 2009.  Both appeals raise issues as to the validity of the 2006 Zoning Regulations more than two years after the effective date of those Regulations.  Sapir Questions 1(e), 1(f), and 31, and Miller Question 8 are therefore barred under 24 V.S.A. § 4442(c) and must be DISMISSED.

Appellants also assert that these questions should not be barred, notwithstanding 24 V.S.A. § 4442(c), based on the doctrine of "equitable tolling," or the related doctrine of "equitable estoppel."  The doctrine of equitable tolling applies either where a party "is shown to have actively misled or prevented the plaintiff in some extraordinary way from discovering the facts essential to the filing of a timely lawsuit,

9

or where the plaintiff has timely raised the same claim in the wrong forum." <u>Kaplan v. Morgan Stanley & Co., Inc.</u>, 2009 VT 78, ¶ 11 (mem.) (citing <u>Beecher v. Stratton Corp.</u>, 170 Vt. 137, 142–43 (1999)). Appellants argue that the Town misled them because it kept the 2006 Zoning Regulations "secret," while the 2002 Zoning Regulations were posted as the Town's Zoning Regulations on the Addison County Regional Planning Commission's (ACRPC) website.[6]

However, no evidence presented to the Court demonstrates that the Town kept the 2006 Zoning Regulations "secret" in any way. To the contrary, the Town gave proper notice of the proposal of and the hearings on the 2006 Zoning Regulations, and made copies available to the public in the Town Clerk's office. The outdated zoning regulations posted on the ACRPC website cannot be attributed to the Town; no party has suggested that the ACRPC website is under the Town's control. Accordingly, there is no basis for equitable tolling of the time limit established by 24 V.S.A. § 4483(b) for raising this issue.

Similarly, the doctrine of equitable estoppel, as a general rule, requires a showing that a party's conduct in some way induced the opposing party to "delay bringing suit, or 'lull[ed] him into inaction.'" <u>Kaplan</u>, 2009 VT 79, ¶ 12 (quoting <u>Beecher</u>, 170 Vt. at 140). The doctrine "is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit." <u>Cerbone v. Int'l Ladies' Garment Workers' Union</u>, 768 F.2d 45, 49–50 (2d Cir. 1985) (cited with approval in <u>Kaplan</u>, 2009 VT 79, ¶ 12).

To establish equitable estoppel, "(1) the party to be estopped must know the facts; (2) the party being estopped must intend that his conduct shall be acted upon or

---

[6] As of early December of 2009, the ACRPC website still showed the 2002 Zoning Regulations as the zoning ordinance posted for Bridport. See http://www.acrpc.org/pages/communities/plan_zone/Bridport.htm (last visited Dec. 7, 2009).

the acts must be such that the party asserting estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely to his or her detriment on the estopped party's former conduct." In re Griffin, 2006 VT 75, ¶ 18, 180 Vt. 589 (mem.) (citing Jones v. Dep't of Forests, Parks & Recreation, 2004 VT 49, ¶ 15, 177 Vt. 81). Courts "apply equitable estoppel against the government only in 'rare instances' when the elements of estoppel are met and the injustice that would result from denying the estoppel outweighs the negative impact on public policy that would result from applying estoppel." In re Griffin, 2006 VT 75, ¶ 18 (citing Lakeside Equip. Corp. v. Town of Chester, 2004 VT 84, ¶ 8, 177 Vt. 619 (mem.)).

Appellants have presented no evidence to the Court showing that they were "lulled into inaction" in reliance on some conduct attributable to the Town, nor have they established any of the requirements for establishing equitable estoppel against a government entity.


Sapir Question 1(g) and Miller Question 7

Sapir Question 1(g) asks whether the ZBA's decision should be vacated and remanded because the "State of Vermont, an abutting landowner to Applicant's property (Lake Champlain), was not notified of the application or proceeding[,] as required by law for all abutting landowners." Similarly, Miller Question 7 asks whether "the Town fail[ed] to properly notify interested parties of their right to appeal." In these questions, Appellants Sapir and Miller raise the issue that the notice to some other landowners and potential interested parties was insufficient, and therefore that the ZBA proceedings should be treated as invalid.

However, Appellants "do not assert any detriment to them stemming from [this] failure," which is a prerequisite to having standing to bring the issue before this Court. Appeal of Green Meadows Ctr., LLC, Nos. 208-12-01 Vtec, 152-9-01 Vtec, & 179-10-99

11

Vtec, slip op. at 5 (Vt. Envtl. Ct. May 13, 2002) (Wright, J.). Without a showing that the lack of notice to the State or to any other potential interested party regarding the right to appeal caused harm or detriment to Appellants, Appellants lack standing to assert this issue. Accordingly, Sapir Question 1(g) and Miller Question 7 must be DISMISSED.

Sapir Question 6 and portions of Questions 23 and 25, and Miller Question 12

Sapir Question 6 asks whether granting conditional use approval for the second application "violate[s] State laws and regulations" because (a) the project's septic system has not been approved by the State for commercial use; (b) the project has not obtained a wastewater system and potable water supply permit from the State; (c) the project's "driveway does not meet the State requirements for access to a State road from a driveway used for commercial purposes"; and (d) Applicant has not obtained state Act 249 and Act 250 permits. Similarly to Sapir Question 6, Sapir Question 23 addresses whether the application will increase the project's "non-conformity with existing State laws [and] rules" (as well as addressing its non-conformity with zoning regulations, discussed below). Similarly to Sapir Question 6(c), the first portion of Sapir Question 25 asks whether the application should be denied for failure to obtain a state access permit for the business use of the driveways accessing Route 125. Miller Question 12 also asks whether Applicants "need other permits, inspections[,] and approvals."

The 2006 Zoning Regulations do not require an applicant to obtain any other required state or municipal permits prior to obtaining conditional use approval. See Zoning Regulations §§ 350–56. Even if other state or municipal permits are in fact required before a project can operate, those permits are not required to be obtained prior to conditional use approval unless the applicable zoning ordinance explicitly requires an applicant to obtain such a permit as a prerequisite to conditional use approval.

A "conditional use must comply with bylaws and regulations adopted at the

12

time of submission of the application."  Zoning Regulations § 354(4).  However, § 620, governing access permits, only requires a "non-agricultural business use" involving the "construction or modification of a driveway intersecting with a road designated as a Class III town road or higher" to obtain an access permit from the State for state highways (or from the Selectboard or its agent for town roads) "prior to the issuance of a zoning permit."[7]  Zoning Regulations § 620.  The issuance of a zoning permit by the Zoning Administrator occurs only after all of the other approvals required by the Zoning Regulations have been obtained.  See Zoning Regulations § 322 (stating that the Zoning Administrator shall not issue a zoning permit "unless an application, site plan[,] and other approvals required by these regulations have been properly submitted").  Thus, regardless of whether § 620 of the Zoning Regulations is applicable to this proposal, that provision only requires an access permit prior to issuance of Applicant's zoning permit; it does not require Applicant to obtain an access permit as a prerequisite to conditional use approval, and therefore is inapplicable to the present appeal.

Accordingly, Sapir Question 6, the phrase "existing State laws, rules" in Sapir Question 23, the first portion of Sapir Question 25, and Miller Question 12 must be DISMISSED, as nothing in the Zoning Regulations requires Applicants to obtain any such permits prior to consideration of conditional use approval.

Sapir Questions 8 through 21 and 23 through 27, and Miller Questions 1 through 4 and 9

The Town argues that Sapir Questions 8 through 21 and 23 through 27, and Miller Questions 1 through 4 and 9, "should each be dismissed as impermissibly vague or [should be] made subject to an appropriate order to clarify."

---

[7]  Facts also may be disputed, or at least have not been provided to the Court in these motions, as to whether the proposal involves any construction or modification of any driveway access.

The Statement of Questions "establishes the scope of the appeal and[,] in a de novo appeal such as this one, the scope of discovery and preparation for trial." In re: Unified Buddhist Church, Inc., Indirect Discharge Permit, No. 253-10-06 Vtec, slip. op. at 5 (Vt. Envtl. Ct. May 11, 2007) (Wright, J.). For this reason, Appellees "are entitled to a statement of questions that is not vague or ambiguous, but is sufficiently definite so that they are able to know what issues to prepare for trial." Id. Because it is an applicant's "burden [to come] forward with evidence to show that the application meets the criteria" for conditional use approval, Appellees are "entitled to understand in what respect an appellant believes that the application fails to meet such criteria." Id. For each question that does not give Appellees notice of what issues to prepare for trial, Appellants must submit a more specific statement of that question, clarifying what is specifically at issue.

Sapir Questions 8 through 11, 13 through 18, 21, 24, the second portion of 25, 26, and 27, and Miller Questions 1 through 4 (except as to § 354(4)), address the specific criteria applicable to the merits of conditional use approval with sufficient clarity. The normal rules of discovery, including requests to admit, are available to Appellees to further narrow the factual issues raised by these questions. As to these questions, the motion to clarify and/or to dismiss is DENIED.

On the other hand, Sapir Questions 12, 19, 20, and 23 (other than the phrase "existing State laws, rules," which was previously dismissed), and Miller Questions 4 (as to § 354(4)) and 9 do not give Appellees adequate notice of what they must show at trial. These questions do not specify which sections of the Zoning Regulations are claimed not to be met, and do not state whether Appellants intend by these questions to raise any issues beyond those raised by the other questions in the Statements of Questions. Accordingly, the motion to clarify and/or to dismiss is GRANTED as to these Questions. On or before December 18, 2009, Appellants Sapir may file revisions to their Questions 12, 19, 20, and 23, and Appellants Miller may file revisions to their

14

Questions 4 (as to § 354(4)) and 9, stating any issues raised by these questions beyond those already raised by other questions, and specifying the sections of the Zoning Regulations at issue. Otherwise, Sapir Questions 12, 19, 20, and 23, and Miller Question 4 (as to § 354(4)) and Question 9, will be dismissed, effective on December 21, 2009.

Sapir Question 22

Sapir Question 22 asks whether the application should be denied pursuant to §§ 503 and 503A of the Zoning Regulations because the driveway access to and from Route 125 for "the proposed business use and for parking for the proposed use was not approved by the Town of Bridport Planning Commission for access and because the driveway does not have a permanent easement or right of way as least 20 feet in width."

Sections 503 and 503A only require Planning Commission approval of "access to . . . a road or [public] waters by a permanent easement or right-of-way at least 20 feet in width" for "lots which do not either have frontage on a street or [on] public waters," implementing 24 V.S.A. § 4412(3). Zoning Regulations § 503. Therefore, these sections are not applicable to lots that do have frontage on a road, such as the B&B lot or the Field lot, or to lots that do have frontage on the public waters of Lake Champlain, such as the Lakeshore lot.

Under V.R.C.P. 12(b), "[w]here matters outside the pleadings were presented to and not excluded by this Court in the course of considering a motion to dismiss, the motion is in essence converted to one for summary judgment." Perini Road Quarry, No. 264-12-05 Vtec, slip op. at 4 (Vt. Envtl. Ct. Aug. 18, 2006) (Durkin, J.) (citing Lueders v. Lueders, 152 Vt. 171, 172 (1989)). Summary judgment "is appropriate only where, giving the nonmoving party the benefit of all reasonable doubts and inferences, the movant establishes there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Id. (citing Murray v. White, 155 Vt. 621, 628

15

(1991)). Because it is undisputed that all three lots at issue in this appeal "have frontage on a street or [on] public waters," §§ 503 and 503A of the Zoning Regulations are not applicable and as a matter of law Appellees are entitled to summary judgment with respect to Sapir Question 22.

Sapir Questions 28 and 29

Sapir Question 28 asks whether the application should be denied because the proposed use contravenes the "Objectives and Guidelines" applicable in the Shoreland Planned Residential District; the question goes on to list several goals enumerated in § 906(A) of the Zoning Regulations. Sapir Question 29 asks whether the application should be denied because the proposal contravenes "the stated intent of the Zoning Regulations to provide for orderly community growth and to further the purposes established in" the state zoning enabling statute; the question goes on to list several goals enumerated in §§ 4302 (a) and (c) of the statute. See 24 V.S.A. §§ 4302 (a), (c). The Town argues that these two questions should "be dismissed as impermissibly vague or [should be] made subject to an appropriate order to clarify."

Nothing in the Zoning Regulations converts the broad purpose statements cited in Questions 28 and 29 into regulatory criteria applicable to the merits of conditional use approval. The language cited in Question 28, drawn from the "Objectives and Guidelines" statement regarding Shoreland Planned Residential Districts, "are hortatory, not regulatory provisions." Appeals of Perrine, Nos. 221-12-03 Vtec & 38-3-04 Vtec, slip op. at 6 (Vt. Envtl. Ct. Nov. 30, 2004) (Wright, J.) (citing Appeal of Baribault, No. 165-9-98 Vtec, slip op. at 8 (Vt. Envtl. Ct. May 29, 2000) (Wright, J.); Kalakowski v. John A. Russell, 137 Vt. 219, 225–26 (1979)). The ZBA "is directed to consider these purposes when administering the . . . Regulations, but these purposes are not mandatory. They provide a guide or context to the administration of the regulations, but they are not independently enforceable just as the provisions of a

16

municipal plan are not independently enforceable." Id. Therefore, although these objectives and guidelines are intended to guide decisions of the ZBA, and hence of this Court in this de novo appeal, they have no independent regulatory effect.

Similarly, in Question 29 Appellants cite § 120 of the Regulations and several goals enumerated in 24 V.S.A. §§ 4302 (a) and (c) of the state zoning enabling statute. Section 120 first states that it is the "intent of these regulations to provide for orderly community growth"; this statement of purpose, like those in § 906(A), is not a mandatory requirement that is "independently enforceable." Appeals of Perrine, Nos. 221-12-03 Vtec & 38-3-04 Vtec, slip op. at 6. The second statement of purpose in § 120, states that it is the intent of the Zoning Regulations "to further the purposes established in [24 V.S.A.] Section 4302." In turn, 24 V.S.A. § 4302 lists the "general purposes" and "goals" of the state zoning enabling statute, which are also presented in hortatory or aspirational language. Therefore, although the Town's zoning regulations are intended to further the purposes and goals of the state statute, those purposes and goals also are not independently enforceable other than through the regulatory sections of the Zoning Regulations. Accordingly, Sapir Questions 28 and 29 must be DISMISSED, as the cited provisions have no independent regulatory effect.

Sapir Question 30 and Miller Questions 10 and 11

Sapir Question 30 and Miller Question 10 address whether the conditions imposed by the ZBA are adequate or what conditions should be imposed. In addition, Miller Question 11 asks whether the ZBA should have imposed a condition requiring Applicants subsequently to obtain "all necessary State inspections and permits."

This appeal is de novo, so that the Court will be considering what conditions, if any, should be imposed if the project were to be approved, rather than reviewing the adequacy of the conditions imposed in the ZBA's decision. See, e.g., Appeal of Waters, No. 186-10-03 Vtec, slip op. at 6, n.3 (Vt. Envtl. Ct. Mar. 17, 2004) (Wright, J.) (stating

17

that the Court sits "in the place of the ZBA to hear the application anew (de novo), without regard to what the ZBA decided before"). To the extent that these questions raise issues as to what conditions should be imposed by the Court, or whether any conditions are sufficient to enable the project to meet the applicable regulations, they are within the scope of the present proceeding. Accordingly, the motion to dismiss them is DENIED, but on or before December 18, 2009, Appellants Sapir and Miller shall file restated versions of Sapir Question 30 and Miller Questions 10 and 11, respectively, reflecting the de novo nature of this appeal.

Hancox Question 1 and Miller Question 13

Hancox Question 1 asks whether conditional use approval should be denied because of "conflicting facts the Applicant(s) provided to the ZBA, regarding the Application." The three subparts to Hancox Question 1 give specific examples of statements made by Appellees during the ZBA proceedings that Appellants Hancox assert are inconsistent with what has actually occurred during past events held on the property. Miller Question 13 asks whether Applicants held "events without obtaining the necessary permits, inspections[,] and approvals" and "in violation of" the conditional use approval at issue in this appeal.

The only issue on appeal is whether conditional use approval should be granted for Applicant's proposal. The Court does not review any record of what facts were presented to the ZBA. Rather, if this matter reaches a hearing on the merits, the Court will hear evidence anew, beginning with Applicant's evidence in support of the application. See, e.g., Waters, No. 186-10-03 Vtec, slip op. at 6, n.3; In re: Simpson Dev. Corp., No. 54-3-05 Vtec, slip op. at 2. Any cross-examination of that evidence will occur during trial. Accordingly, to the extent that Hancox Question 1 and Miller Question 13 seek to raise facts regarding whether the project will be able to meet the conditional use standards, those questions are DISMISSED, but Appellants are free to present relevant

18

evidence as to these facts at trial.

In addition, to the extent that Miller Question 13 seeks to enforce either the Zoning Regulations or the ZBA's April 2009 final decision approving solely the bed-and-breakfast use, it is beyond the scope of this appeal, and would in any event be dismissed for that reason. See 24 V.S.A. §§ 4452–53; id. § 4470(b) (zoning enforcement authority).

Hancox Question 2

Hancox Question 2 asks whether conditional use approval should be denied "because the Applicant did not give legal notification to the Appellants when [Appellees'] property was subdivided," arguing that Appellants were thereby denied an opportunity to comment on certain restrictions or covenants that apply to lots to the south of and to the north of Appellees' property.

Hancox Question 2 does not explain when the subdivision occurred to which that question refers. If it was reviewed and approved by the Planning Commission, and became final without appeal, it cannot now be challenged, either directly or indirectly. 24 V.S.A. §4472(d); see also, e.g., Town of Charlotte v. Richmond, 158 Vt. 354, 356 (1992) ("[I]n the absence of an appeal, all parties are bound by local zoning decisions and shall not thereafter contest, either directly or indirectly, such decision or act." (internal quotations omitted)).

If the subdivision was not subject to municipal approval, Hancox Question 2 only raises issues as to restrictions or covenants applicable to the land to the south and north of the project property. In that event the question is simply beyond the scope of this appeal and beyond the jurisdiction of the Environmental Court. This "Court is not vested with the jurisdiction to determine the parties' respective private property rights to land or easements that benefit or encroach upon their property." Appeal of Van Nostrand, Nos. 209-11-04 Vtec & 101-5-05 Vtec, slip op. at 9 (Vt. Envtl. Ct. Jan. 13, 2006)

19

(Durkin, J.); see also Appeal of Keough, No. 244-11-02 Vtec, slip op. at 2–3 (Vt. Envtl. Ct. Mar. 11, 2003) (Wright, J.) ("The ZBA does not have jurisdiction of private property rights such as a covenant . . . , and therefore neither does this Court."). Any such claims instead "must be presented to the appropriate Superior Court for adjudication." Appeal of Van Nostrand, Nos. 209-11-04 Vtec & 101-5-05 Vtec, slip op. at 9.

Accordingly, regardless of whether Hancox Question 2 asks the Court to adjudicate the effect of a prior subdivision on their property rights, or whether the question seeks to challenge a final Planning Commission decision as to that prior subdivision, it must be DISMISSED.

### Sapir Questions 1(a) through (d) and 1(h), and Miller Questions 5 and 6

The Town has moved to dismiss Sapir Questions 1(a) through (d) and 1(h), and Miller Questions 5 and 6, arguing that the Court should not consider procedural defects of the ZBA proceeding in this de novo appeal. The Town is correct that "procedural defects" in reaching a ZBA decision "are generally disregarded in a de novo appeal, because the court must make its own determination as to the questions of law and fact raised in the appeal, and must 'apply the substantive standards that were applicable before the tribunal appealed from.'" In re: JLD Properties – Wal Mart St. Albans, No. 132-7-05 Vtec, slip op. at 4 (Vt. Envtl. Ct. Sept. 5, 2006) (Wright, J.) (citing V.R.E.C.P. 5(g)). However, "[i]f a procedural defect is so inherently unfair that it calls the whole process into disrepute, the remedy is for the Court to remand the application to the municipal body to conduct a fair proceeding, rather than to deny the application." In re: Geddes 9-Lot Subdivision, No. 101-5-07 Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 22, 2008) (Wright, J.) (citing In re: JLD Properties, No. 132-7-05 Vtec, slip op. at 8).

### Sapir Question 1(a) and Miller Question 5

Sapir Question 1(a) and Miller Question 5 deal with whether the Vermont Open

20

Meetings Law and due process standards were violated, asserting that the ZBA privately conferred with Applicants about the application after the public hearing had occurred. Although Appellants Sapir only reference the Vermont Open Meetings Law, their memoranda of law indicate that they are also challenging this action under constitutional concepts of fundamental due process. See Appellants Sapir's [Revised] Opposition, at 1–2 (Oct. 19, 2009).

Any actions to enforce the Vermont Open Meetings Law, 1 V.S.A. §§ 310–14, must be brought in superior court. See 1 V.S.A. § 314(b) ("[A]ny person aggrieved by a violation of the provisions of this subchapter may apply to the superior court in the county in which the violation has taken place for appropriate injunctive relief or for a declaratory judgment."). The Environmental Court therefore does not have statutory authority to consider violations of the Vermont Open Meetings Law. Accordingly, Sapir Question 1(a) and Miller Question 5 are DISMISSED to the extent that they relate to the Vermont Open Meetings Law.

On the other hand, to the extent that Sapir Question 1(a) and Miller Question 5 relate to constitutional concepts of fundamental due process, or to statutory requirements of the zoning statute, they are within the scope of the present proceeding. Accordingly, the Town's Motion to Dismiss Sapir Question 1(a) and Miller Question 5 is DENIED to the extent that they relate to constitutional concepts of fundamental due process. However, material facts are in dispute, or at least have not been provided in accordance with V.R.C.P. 56, as to what occurred before the ZBA, and in particular as to whether all of the ZBA hearings were open to the public, or were properly noticed. See 24 V.S.A. § 4468. Evidence may be presented at trial as to the due process aspects of these questions; any parties wishing to present further motions for summary judgment as to these questions should address the scheduling of such motions at the next pretrial conference.

21

<u>Sapir Questions 1(b) through (d), and Miller Question 6</u>

Sapir Questions 1(b), (c), and (d) ask whether the ZBA's action in appointing a committee of three of its five members to take action after the May 15, 2009 hearing had concluded, including to conduct a noise investigation and collect evidence at a site visit at the project property, and to deliberate and vote on the conditional use application, invalidate the ZBA's decision and require a remand. Similarly, Miller Question 6 asks whether the ZBA decision was made by the necessary quorum of ZBA members.

These questions raise issues of whether the ZBA closed the hearing on May 15, 2009, or adjourned it to a later date, and whether such action complied with the requirements of 24 V.S.A. § 4468 as to warning any future public hearings. These questions also may relate to how a municipal panel may reopen a hearing to receive evidence or information after it has been closed, and what constitutes a quorum of the panel for taking action.

Under Vermont law, a quorum consisting of a majority of the full board must be present to take action, and a majority of the full board, rather than merely a majority of those present, must concur to exercise the panel's authority. See 1 V.S.A. § 172 ("When joint authority is given to three or more, the concurrence of a majority of such number shall be sufficient and shall be required in its exercise."); <u>In re Reynolds</u>, 170 Vt. 352, 356 (2000) (rejecting the common law majority-of-a-quorum rule). As the ZBA in the present case is composed of five members, three members constitute a quorum.

In the present case, only the three ZBA members who participated in the May 15, 2009 public hearing and the site visit later deliberated and voted on the application. No issue therefore arises as to whether members who have not been present for an entire hearing can vote on the application.[8]

---

[8] In any event, even under the more rigorous requirements of the Municipal Administrative Procedure Act applicable to on-the-record proceedings, a panel member who is absent from a hearing may listen to the recording and review all the evidence,

ZBA decisions must be based on evidence presented at the hearing regarding the application at issue, including any evidence stipulated to by the parties, and "[a]ll hearings . . . shall be open to the public." 24 V.S.A. § 4468. Such hearings "may be adjourned by the appropriate municipal panel from time to time; provided, however, that the date and place of the adjourned hearing shall be announced at the hearing," id., or by a notice of the hearing otherwise complying with the notice requirements of 24 V.S.A. § 4468.

A municipal panel such as a ZBA or a development review board (DRB) that has closed a hearing may reopen it to take additional evidence under certain circumstances.

> As explained at length in In re Appeal of Dunn, No. 2-1-98 Vtec (Vt. Envtl. Ct. Mar. 8, 1999) . . . a DRB may vote to reconsider its decision as long as the time has not expired for an appeal to be taken from the decision, that is, if there has not been reliance on the previous decision. A DRB may warn a hearing to take additional evidence and an additional vote, by following the procedures for reconsideration outlined in Appeal of Dunn.

> In re: Clyde's Place, LLC, Application, No. 9-1-08 Vtec, slip op. at 6 (Vt. Envtl. Ct. Nov. 14, 2008) (Wright, J.).

However, material facts are in dispute, or at least have not been provided in accordance with V.R.C.P. 56, as to what may have occurred during or after the May 15, 2009 public hearing, and especially as to whether the site visit was part of the public hearing, whether any other public hearing was held subsequent to the ZBA's receiving Appellees' May 27, 2009 letter or May 26, 2009 site plan, and whether any public hearing was held on June 17, 2009. Accordingly, the motion to dismiss Sapir Questions 1(b) through (d) and Miller Question 6 is DENIED, as these questions raise legitimate issues as to the validity of the ZBA's actions. Any parties wishing to present further motions for summary judgment as to these questions should address the scheduling of

---

and then participate in the deliberations. 24 V.S.A. § 1208(b); see also, e.g., Appeal of Tepper, No. 225-12-04 Vtec, slip op. at 11 (Vt. Envtl. Ct. Feb. 8, 2006) (Durkin, J.).

such motions at the next pretrial conference.


<u>Sapir Question 1(h)</u>

Sapir Question 1(h) asks whether the ZBA decision should be invalidated because the ZBA treated the project "property as one lot, failed to make findings of fact, made erroneous conclusory findings, and adopted inadequate conditions that lacked specificity and enforceability in its Decision." Because this appeal is <u>de novo</u>, and the Court will make its own determination as to the questions of law and fact raised in the appeal, make its own conclusions, and, if necessary, determine appropriate conditions to apply, the majority of this question must be dismissed.

However, a ZBA decision that is entirely devoid of the factual findings required by 24 V.S.A. § 4464(b)(1), may be invalidated and remanded to the ZBA. See, e.g., <u>Appeals of Schneeberger</u>, Nos. 11-1-04 Vtec & 12-1-04 Vtec, slip op. at 7 (Vt. Envtl. Ct. Sept. 16, 2004) (Wright, J.) ("The decision of the ZBA on appeal in this case is entirely devoid of findings, and we cannot tell whether it even considered the general or specific standards for conditional use approval"; therefore, "even though the matter is <u>de novo</u> before the Court, the ZBA decision must be vacated and remanded."); see also <u>In re Appeal of Leikert</u>, No. 2004-213, slip op. at 2 (Vt. Nov. 10, 2004) (unpublished mem.) ("The purpose of findings [of fact] is to make a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached." (citing <u>New England P'ship v. Rutland City Sch. Dist.</u>, 173 Vt. 69, 74 (2001)). Therefore, all other issues in Sapir Question 1(h) are DISMISSED, except for the issue of whether the June ZBA Decision should be vacated and remanded because "[t]he ZBA failed to make findings of fact."


<u>Appellants' Motions for Summary Judgment</u>

Appellants all moved for summary judgment, making two basic arguments.

24

First, Appellants argue that the second application was an impermissible successive application that should not have been be entertained by the ZBA and should not be considered by this Court. Second, they contend that the application should be denied because the proposed wedding and events venue does not fall within the "home-based business" use category that is listed as a conditional use in the Shoreland Planned Residential Zoning District.

Successive Application

Under the successive-application doctrine, the general rule is that "a zoning board or planning commission may not entertain a second application concerning the same property after a previous application has been denied, unless a substantial change of conditions ha[s] occurred." In re Armitage, 181 Vt. 241, 244 (2006) (citing In re Carrier, 155 Vt. 152, 158 (1990)); see also 24 V.S.A. § 4470 ("An appropriate municipal panel may reject an appeal or request for reconsideration without hearing and render a decision . . . if the appropriate municipal panel considers the issues raised by the appellant in the appeal have been decided in an earlier appeal or involve substantially or materially the same facts by or on behalf of that appellant.")

A municipal panel such as the ZBA is permitted to entertain a successive application "when the application has been substantially changed so as to respond to objections raised in the original application or when the applicant is willing to comply with conditions the commission or court is empowered to impose." In re Jolley Associates, 2006 VT 132, ¶ 12, 181 Vt. 190 (quoting In re Carrier, 155 Vt. at 158); see also, e.g., In re McGrew, 2009 VT 44, ¶ 10 ("[A] local planning agency or court may consider a second application which has been substantially changed to respond to objections to the first."); In re Dunkin Donuts S.P. Approval (Montpelier), 2008 VT 139, ¶ 8 (By "address[ing] all concerns that prevented approval of the prior application," an applicant is not bound by the previous denial and may resubmit a proposal to the

appropriate municipal panel.).

In the present case, the ZBA initially had denied conditional use approval for the wedding and events venue on solely the 3.67-acre parcel containing the bed-and-breakfast building and the other structures. The ZBA decision stated that the denial was "based on complaints of noise and other." April 2009 ZBA Minutes, at 2. The "other" concerns raised by neighbors during the April 22, 2009 hearing, other than the potential for "excessive noise," involved the "brightness of lighting," "headlights of vehicles," unspecified "activities which may occur within the sight of people enjoying [neighboring] property," and the potential that wedding guests might wander onto the neighboring properties. Id.

The second application proposed a number of changes from the first application, and provided much greater specificity. Appellees added their two other parcels of land to the proposal, comprising some 33 additional acres, and proposed to regulate parking to address concerns about the direction of headlights and parking during events. The second application proposed to cap the number of annual events at twelve, and to limit the number of guests at eight of those events to 125 and four of the events to 100, compared to the initial proposal setting a 175-guest limit and no limit on the number of events. The proposal for fewer and smaller events could be expected to address issues of noise, as well as the numbers of vehicles to be parked on site. The second application also proposed limitations on the amplification of music played at events, and proposed to require that music be directed towards a closed side of the tent, also to address issues relating to noise.[9] The second application also proposed to limit the types of events held on the property to wedding-related events, and to completely screen the toilet facilities from neighbors' views, which might address concerns about activities that

---

[9] The parties have not provided sufficient information to determine the extent to which the size, location, or other aspects of the use of tents differed between the two applications, if at all.

could be seen from neighboring properties.

It remains for the merits of this <u>de</u> <u>novo</u> proceeding to determine whether any of the proposed changes in the application warrant conditional use approval of the proposal. The addition of the Lakeshore and Field lots and the other proposed changes and limitations are sufficiently different from the original proposal, and are aimed at addressing the reasons for which the prior application was denied, to allow the second application to be considered by this Court on its merits. Therefore, Appellants' Motions for Summary Judgment on the issue of successive application are DENIED.

<u>Use Category of "Home-Based Business"</u>

Appellants' second contention is that the application should be denied because the proposed wedding and events venue does not fall within the "home-based business" use category that is listed as a conditional use in the Shoreland Planned Residential Zoning District.[10]

Under the Zoning Regulations, "home[-] based business" is defined as:

> A use conducted within a portion of a dwelling by a resident thereof, or in a separate garage or outbuilding on the resident's property. Home-based businesses may employ up to six non-resident fulltime equivalent employees. A home-based business shall be a conditional use. The purpose of allowing this use is to encourage the reuse of existing agricultural buildings, provide reasonable employment opportunities within the Town of Bridport and to accommodate reasonable growth of home businesses. The limit on the number of employees recognizes that a business may grow too large to remain in the neighborhood in which it started and will need to be relocated.

Zoning Regulations § 130 (definitions).

At this time, material facts are in dispute at least as to the extent to which

---

[10] It is not entirely clear whether the second application, for the wedding events venue, was proposed as a second, independent home-based business, or whether it was proposed as an accessory use to the approved bed-and-breakfast home-based business.

Appellee-Applicant is a "resident" of the dwelling during the May through October period proposed for the wedding venue business; how, if at all, the barns and garage are proposed to be used by the business; the specific number of full-time-equivalent employees the business proposes to employ at any given time; the size, location, and number of tents proposed; and whether a tent falls within the definition of a "building" or qualifies as an "outbuilding" under the Zoning Regulations. Accordingly, as material facts are in dispute regarding whether the business falls within the definition of home-based business, Appellants' Motions for Summary Judgment on this issue are DENIED. However, any parties wishing to present further motions for summary judgment as to this issue should address the scheduling of such motions at the next pretrial conference.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED as follows with regard to the pending motions:

- Appellants Miller's Motion to Vacate and Remand is DENIED.
- The Town's Motion to Dismiss and/or Clarify is DENIED as to Sapir Questions 1(b) through 1(d), 8 through 11, 13 through 18, 21, 24, 26, and 27; and Miller Questions 1 through 3, Question 4 (except as to § 354(4)), and Question 6. The Town's motion is also DENIED as to Sapir Question 30 and Miller Questions 10 and 11, except that on or before December 18, 2009, those questions shall be restated to present them as issues for this Court to determine in this de novo proceeding.
- The Town's Motion to Dismiss is GRANTED as to Sapir Questions 1(e) through 1(g), 6, 7, 28, 29, and 31; Miller Questions 7, 8, 12 and 13; and Hancox Questions 1 and 2.
- The Town's Motion to Clarify is GRANTED as to Sapir Questions 12, 19, and 20, and Miller Question 9, as follows. On or before December 18, 2009, Appellants Sapir and Miller may file revisions to Sapir Questions 12, 19, and 20, and to Miller Question 9, specifying the sections of the Zoning Regulations at issue and specifying any issues

28

raised in these questions beyond those already raised by other questions. Otherwise, Sapir Questions 12, 19, and 20, and Miller Question 9, will be dismissed, effective on December 21, 2009.

- The Town's Motion to Clarify is GRANTED in part as to Miller Question 4, as it relates to § 354(4) only. On or before December 18, 2009, Appellants Miller may file revisions to Miller Question 4 (as to § 354(4)), specifying what sections of the Zoning Regulations are raised by this question beyond those sections already raised by other questions. Otherwise, the portion of Miller Question 4 relating to § 354(4) will be dismissed, effective on December 21, 2009.

- The Town's Motion to Dismiss is GRANTED in part and DENIED in part as to Sapir Question 1(a), in that only the reference to the Vermont Open Meetings Law is dismissed; Sapir Question 1(h), in that all issues are dismissed except the issue of whether the June ZBA decision should be vacated and remanded because "[t]he ZBA failed to make findings of fact"; Sapir Question 25, in that only the portion regarding Applicant's failure to obtain a state access permit is dismissed; and Miller Question 5, in that only the reference to the Vermont Open Meetings Law is dismissed.

- The Town's Motion to Dismiss and/or Clarify is GRANTED as to Sapir Question 23, in that the portion regarding the project's "non-conformity with existing State laws [and] rules" is dismissed, and the portion regarding the project's non-conformity with the Zoning Regulations is subject to an order to clarify. On or before December 18, 2009, Appellants Sapir may file revisions to the portion of Sapir Question 23 regarding the project's non-conformity with the Zoning Regulations, clarifying what issues, if any, it raises beyond those already raised by other questions, and specifying the sections of the Zoning Regulations at issue. Otherwise, that portion of Sapir Question 23 will also be dismissed, effective on December 21, 2009.

- Summary Judgment is GRANTED in favor of Appellees as to Sapir Question 22, for

29

the reasons stated above.

- Appellants' Motions for Summary Judgment are DENIED, as the second application is not an impermissible successive application, and material facts are in dispute as to whether the proposed project falls within the use category of home-based business.

A telephone conference has been scheduled (see enclosed notice) to address the timing of mediation already ordered by the Court, the pending discovery issues, and whether any additional issues can be resolved by summary judgment.

Done at Berlin, Vermont, this 9th day of December, 2009.

_____
Merideth Wright
Environmental Judge