STATE OF VERMONT

SUPERIOR COURT                     ENVIRONMENTAL DIVISION
Docket No. 95-8-19 Vtec

| | |
|---|---|
| Castine Mountain Road, LLC<br>Conditional Use | **DECISION ON THE MERITS** |

Appellant Michael Seaberg ("Mr. Seaberg") appeals a July 16, 2019 decision of the Town of Stowe Development Review Board ("DRB"), approving with conditions a conditional use application submitted by Castine Mountain Road, LLC ("Castine" or "Applicant"). This is an on-the-record appeal.

Mr. Seaberg represents himself in this matter. Castine is represented by Alexander J. LaRosa, Esq. The Town of Stowe ("Town") is participating as an interested person and is represented by Joseph S. McLean, Esq.[1]

**Background**

Castine owns a parcel approximately 4.2 acres in size, located at 4527 Mountain Road in Stowe, Vermont ("the Property"). The Property is located within the Upper Mountain Road ("UMR") Zoning District. This Property was previously owned by VTRE Investments, LLC ("VTRE"), and is the site for an existing 7-unit multi-family dwelling.[2] Prior owner VTRE also proposed and received municipal approval for a duplex on the Property,[3] which was the subject of a separate appeal before this Court (Docket No. 62-6-18 Vtec). The present appeal relates to Castine's April 9, 2019 application seeking approval to construct a three-bedroom dwelling unit and garage, attached to the existing 7-unit dwelling on the Property ("the Project").[4] Residential multi-family dwelling units are permitted as conditional uses in the UMR District. In connection with its

---

[1] The Town has not submitted a brief in this appeal.

[2] The 7-unit dwelling is shown as buildings #1 and #2 on the site plans and the build out plan in the record. *See* Exs. 2, 13, 14.

[3] The proposed duplex is shown as building #3 on the site plans and the build out plan. *See* Exs. 2, 13, 14

[4] The proposed three-bedroom unit and garage is shown as building #4 on the site plans and the build out plan. *See* Exs. 2, 13, 14.

application, Castine submitted site plans, a landscaping plan, and a build out plan, each prepared by McCain Consulting, Inc., as well as floor plans and elevations prepared by Justin Bourne. The record also contains lighting information, email correspondence, and written comments.

The DRB conducted a public hearing on May 21, 2019, which was then continued to July 2, 2019. The hearing re-opened on July 2, 2019 and adjourned at the end of that proceeding. The DRB reviewed the Project for compliance with the Town of Stowe Zoning Regulations as adopted October 9, 2018, effective October 30, 2018 ("Regulations"). On July 16, 2019, the DRB issued its Findings of Fact and Conclusions of Law ("Decision") approving the application subject to conditions.[5]

---

[5] The DRB imposed 20 conditions, which we paraphrase below:

1. The Project shall be completed according to the plans hereby approved.
2. All relevant prior conditions of approval remain in force, unless otherwise amended herein.
3. Prior to the issuance of a zoning permit, the Applicant shall file:
   a. A written project phasing schedule, noting that construction of Building #4 will not begin until a Certificate of Occupancy is issued for Building #1, followed by construction of the duplex (Building #3). The zoning permit for Building #4 shall not be issued until Applicant has secured a Certificate of Occupancy for Building #1.
   b. A revised landscaping plan and planting schedule meeting the minimum sizing requirements in Regulations § 4.6.
4. All outdoor lighting shall be shielded and aimed to illuminate only the designated area and to avoid glare.
5. Exterior lighting fixtures shall not exceed 2,000 lumens.
6. Construction hours are limited to Monday–Friday, 8:00 AM–5:00 PM, with no construction on federal holidays.
7. All mechanical systems shall be located or screened such that they are not visible from the public right-of-way.
8. Landscaping shall be installed as shown in the plans prepared by McCain Consulting and amended herein. Dead and dying plants shall be replaced within one year.
9. The 50-foot buffer along the river shall be left undisturbed except as specified in Regulations § 3.10.
10. All garbage and recycling shall be stored inside the garage/storage area or in a common screened collection area approved by the Zoning Administrator.
11. No parking is allowed in the proposed turn-around area.
12. Construction shall be conducted in a manner that minimizes the amount of soil exposed at any one time.
13. All areas of exposed soil that are not being actively worked shall be stabilized.
14. Stormwater shall be controlled during construction to minimize erosion and transport of sediment.
15. Soil shall not be disturbed between October 15 and April 15 unless adequate measures are provided to ensure compliance with Regulations §§ 3.12(2)(A)–(C).
16. An adequate stormwater drainage system must be maintained to ensure that existing drainage patterns are not altered in a manner to cause an undue adverse impact on neighboring properties, town highways or surface waters.

Mr. Seaberg is an occupant of the abutting property at 4441 Mountain Road, Stowe, Vermont. He submitted written comments to the DRB and participated in the public hearing on May 21, 2019. Mr. Seaberg filed a timely appeal of the DRB's Decision with this Court on August 12, 2019. We now consider Mr. Seaberg's on-the-record appeal of the DRB's July 16, 2019 Decision.

**Standard of Review**

In an on-the-record appeal, the Court considers only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). We do not take new evidence or make our own factual determinations. Instead, we review the municipal panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision." *See* 24 V.S.A. § 1209(a)—(b).

The Court will affirm factual findings only if they are supported by substantial evidence in the record below. *See* In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 76, 186 Vt. 568. In examining whether there is substantial evidence in the record, the Court does not assess the credibility of witness testimony or reweigh conflicting evidence in the record. *See* Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248; In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 2004) (unpublished mem.). The Court simply looks to whether the record below includes relevant evidence that "a reasonable person could accept . .

17. Any future development, as defined under Regulations § 7 within the Flood Hazard Overlay District, will require review and approval under the regulations in effect at the time of the application.

18. Any future development, as defined under Regulations § 16 within the Fluvial Erosion Hazard Overlay District, will require review and approval under the regulations in effect at the time of the application.

19. A Certificate of Occupancy must be obtained from the Zoning Administrator after construction but before occupancy and use, to ensure that construction has proceeded as approved by the DRB. Prior to the issuance of a Certificate of Occupancy, the Applicant shall provide [the Town with] a copy of the State of Vermont Wastewater Permit and shall complete all landscaping and proposed improvements as shown in the highlighted area on plans prepared by McCain Consulting, Sheet C-1, dated 6/21/2019.

20. These conditions shall run with the land and are binding upon and enforceable against the permittee and his successors. By acceptance of this approval, the Applicant agrees to allow authorized Town representatives to access the subject property, at reasonable times, to ascertain compliance with the conditions of approval.

*See* In re Castine Mountain Road LLC, Findings of Fact & Conclusions of Law, at 9–10 (Town of Stowe Dev. Rev. Bd. Jul. 16, 2019) [hereinafter, "DRB Decision"].

. as adequate" support for the factual findings. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. Of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

The Court then reviews the DRB's legal conclusions without deference, unless such conclusions are within the DRB's area of expertise. Stowe Highlands, 2009 VT 76, ¶ 7.

Our review is additionally limited to those issues raised by an appellant in their statement of questions. See V.R.E.C.P. 5(f). We review the DRB's Decision with these legal standards in mind, and within the context of the legal issues preserved by Mr. Seaberg through his Statement of Questions.

**Discussion**

Mr. Seaberg raises nine Questions in his Statement of Questions. By those Questions, Mr. Seaberg ask whether the DRB erred in: (1) determining that the front yard landscaping was adequate; (2) determining that the Applicant's proposed side yard landscaping was adequate; (3) not requiring a phasing plan to be warned and presented to the public at the DRB meeting; (4) determining that the application would cause no undue water pollution; (5) determining that the application accurately represented the number of bedrooms; (6) not requiring a sediment control plan; (7) determining that the Project's stormwater drainage system was adequate and would not cause an undue adverse impact on neighboring properties; (8) determining that the landscaping and screening were adequate to protect the scenic beauty of the area; and (9) not requiring adequate surety to ensure the completion of the landscaping. See Statement of Questions, filed Sep. 3, 2019.

We recently considered a separate decision from the DRB concerning a different project on the same property. See In re VTRE Inv. LLC Conditional Use Appeal, No.62-6-18 Vtec (Vt. Super. Ct. Envtl. Div. June 30, 2020). There, we vacated an impermissible condition subsequent and remanded the application to the DRB for clarification of its findings of fact and conclusions of law. See id. The Decision before us in this case contains more specific findings and conclusions in some areas, yet there are deficiencies which leave us unable to conduct our on-the-record analysis.

On-the-record municipalities must satisfy the procedural requirements established in the Vermont Municipal Administrative Procedures Act ("MAPA"). See 24 V.S.A. 4471(b). MAPA

requires that appropriate municipal panels, in their final decisions "separately state findings of fact and conclusions of law." 24 V.S.A. § 1209(a). Findings of fact must "explicitly and concisely restate the underlying facts that support the decision" and be "based exclusively on evidence" in the record. Id. §§ 1209(a)–(b). Conclusions of law must be based on those findings. Id. § 1209(c); *see also* In re Appeal of Leikert, No. 2004-213, slip op. at 1, 2004 WL 5582097 (Vt. Nov. 1, 2004) (unpublished mem.) (discussing the important functions served by findings of fact). This Court may not "fill in the gaps" left by deficient municipal panel decisions. Appeal of Leikert, No. 2004-213 at 2 (Nov. 1, 2004).

### I.      Erosion and Stormwater Issues

Mr. Seaberg's Questions 6 and 7 ask whether the DRB erred by failing to require a sediment control plan or by concluding that the Project's stormwater drainage system was adequate. Pursuant to Regulations § 3.12(2), "[c]onstruction-related activities associated with any new construction" must adhere to a set of stormwater management standards. Development "involving the disturbance of more than one-half acre shall submit an erosion and sediment control plan . . . before a zoning permit is issued," and all development must include "an adequate stormwater drainage system" to avoid "an undue adverse impact on neighboring properties." Regulations §§ 3.12(2)(C), (E).

The DRB did not render findings of fact or conclusions of law addressing the standards above.[6] *See* DRB Decision at 7–8. The DRB's Decision does not determine whether the Project will comply with any of the standards found under Regulations § 3.12(2). *See* id. Instead, the Decision requires Castine "to follow the standards outlined in [Regulations § 3.12(2)]" as conditions of approval. *See* DRB Decision at 8, 11 (imposing Conditions 12–16). While it may be appropriate to impose certain conditions, the DRB cannot abdicate its responsibility to determine whether the Project (as proposed or conditioned) will satisfy the applicable standards. Furthermore, this Court cannot assume that the DRB reached positive conclusions of law or "speculate as to what existing findings of fact might relate to . . . [the] absent conclusions." *See*

---

[6] Castine argues that the DRB did make findings and conclusions concerning the amount of impervious surface generated by the Project. We note that impervious surface and soil disturbance are not the same. Compare Regulations § 3.12(2)(C) (discussing "the disturbance of more than one-half acre"), with id. § 3.12(2)(F) (directed at "development that creates more than ½ (one-half) acre of additional impervious surface").

In re Brandon Plaza Conditional Use Permit, No. 128-8-10 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Mar. 26, 2012) (Walsh, J.).

Without a Decision containing findings or conclusions specific to the Project and the applicable Regulations, we cannot conduct our on-the-record review. We conclude that the DRB failed to render adequate findings of fact or conclusions of law with respect to the standards established in Regulations §§ 3.12(2)(C) and (E). *See* 24 V.S.A. §§ 1209(a)–(c) (MAPA); *see also* Brandon Plaza Conditional Use Permit, No. 128-8-10 Vtec at 6 (Mar. 26, 2012). Conditions 14 and 16 must be **VACATED** and the matter **REMANDED** to the DRB to make more specific findings of fact and conclusions of law and, if necessary, hold additional hearings to collect the evidence necessary for it to make such findings and conclusions.[7] If the DRB ultimately decides to impose certain conditions, it must include in its Decision findings of fact and conclusions of law that support such conditions. *See* Brandon Plaza, No. 128-8-10 Vtec at 11 (Mar. 26, 2012).

We now continue our review of the DRB's decision, so as to provide further guidance for the DRB when they revisit and revise their Findings and Conclusions.

## II.    Landscaping Issues

Mr. Seaberg's Questions 1 and 2 ask whether the DRB erred in determining that the Project's front and side yard landscaping was adequate. Regarding front yard landscaping, the conditional use standards require "[a] continuous strip not less than twenty (20') feet deep, measured from the edge of the highway right-of-way, shall be maintained between the street line and the balance of the lot, which strip shall be suitably landscaped." Regulations § 3.7(2)(C)(2)(a). The DRB has discretion to waive this requirement "when mitigation [through] design, screening or other mitigation will accomplish the objectives outlined for the designated districts." Regulations § 3.7(2)(C); *see also* id. § 3.7(2)(C)(2) (listing objectives for the UMR District including the preservation of "a well landscaped highway corridor").

---

[7] Conditions 14 and 16 are directly related to the erosion control and drainage issues raised by Mr. Seaberg in his Statement of Questions. We note that Conditions 12, 13, and 15 also relate to various standards under Regulations § 3.12(2), and those conditions appear similarly unsupported by the DRB's findings of fact and conclusions of law regarding stormwater management. We address only Conditions 14 and 16 because our review is limited to the issues raised in an appellant's Statement of Questions. *See* V.R.E.C.P. 5(f). On remand, we encourage the DRB to revisit all of its stormwater findings, conclusions, and conditions to consider whether additional clarification may be necessary.

6

There are additional standards under Regulations § 4.6 to "ensure that landscaping is designed to enhance the overall appearance of individual properties . . . and to maintain compatibility among neighboring properties," among other things. *See* id. § 4.6(1). Specifically:

> Landscaping shall be designed to achieve the purposes of this section, strengthen the features and conditions unique to each site, and should include a combination of shade trees (deciduous and/or coniferous), deciduous and evergreen shrubs, well kept grasses and ground covers. Landscaping may be required in front and side yards . . . ."

Regulations § 4.6(3)(A). Shade trees "shall be placed to interrupt the façades of buildings, to visually reduce the scale and bulk of large buildings" and "in instances where a planting strip is required along road frontage, at least one (1) street tree shall be planted for each thirty linear feet (30') of landscaping strip. Id. §§ 4.6(3)(C)–(D).

Here, the DRB cited the 20-foot buffer requirement for the front yard but did not render factual findings on the issue. *See* DRB Decision at 8–9. The Decision states that "the Board waived the specific requirements when it was found that mitigation through design, screening, or other mitigation has accomplished the objectives of the UMR District." Id. at 9. Castine argues that the DRB was within its discretion to waive the buffer requirement, yet the Decision does not specify which requirements were waived or what "other mitigation will accomplish the objectives outlined" for the District. *See* id. at 8–9; Regulations § 3.7(2)(C). Permitting decisions must provide sufficient factual findings and legal conclusions to show "what was decided and how the decision was reached." *See* In re Buss Conditional Use Application, No. 130-10-12 Vtec, slip op. at 2 & n.1 (Vt. Super. Ct. Apr. 29, 2013) (Durkin, J.) (quoting New England P'ship v. Rutland City Sch. Dist., 173 Vt. 69, 74 (2001)). Though we recognize that the buffer requirement may be satisfied in the course of permitting for other projects on the Property, we may not "fill in the gaps" of the DRB's Decision in our on-the-record analysis. *See* Appeal of Leikert, No. 2004-213 at 2 (Nov. 1, 2004).

As to side yard landscaping and the requirements of Regulations § 4.6 in general, we conclude that the DRB Decision does not contain sufficient factual findings or any explanation within its conclusion. *See* DRB Decision at 6–7. The Decision should at least include some findings or reasoning to support the DRB's conclusion that "the proposed landscaping . . . meets the standards outlined in Section [4.6]." Id. at 7. According to Castine, the DRB determined that the

7

proposed landscaping would break up the mass of the proposed building. Appellee's Brief at 5, filed Feb. 7, 2020. The Decision does not include any statement to that effect: the DRB concluded only that the proposed building itself would break up the mass of the existing motel building. DRB Decision at 7. The DRB made no findings or conclusions addressing how the proposed landscaping would fit with the proposed building or within the applicable standards.[8] *See* id. As we have said, the DRB "does not fulfill its adjudicative responsibilities by merely reciting the legal standards . . . [r]ather, the panel must also specifically state why the facts of the proposed project fit within those applicable legal standards." Buss Conditional Use Application, No. 130-10-12 Vtec at 2–3 (Apr. 29, 2013).

Because both the factual findings and conclusions of law regarding landscaping lack specificity or an explanation of the DRB's reasoning, we conclude that we must **REMAND** these issues to the DRB, so that it may amend its Decision to incorporate more specific and sufficient findings and conclusions or hold additional hearings to collect the evidence necessary for it to make such findings and conclusions.

### III.     Phasing Plan

Mr. Seaberg's Question 3 asks whether the DRB erred by failing to require a phasing plan. Mr. Seaberg argues that the DRB should have required a plan for the sequencing of construction and landscaping activities as part of the application presented for review. The DRB's Decision includes Condition 3, which requires Castine to file "a written project phasing schedule" with the Zoning Administrator prior to the issuance of a permit. *See* DRB Decision at 10.

Mr. Seaberg cites Regulations § 13.2 for his assertion that projects with a construction period longer than five years must submit a phasing plan to the DRB for review at a public hearing. *See* Regulations § 13.2. Section 13 of the Regulations relates to Planned Unit Development (PUD) applications. Mr. Seaberg does not contend that construction for the Project will take longer

---

[8] In fact, the DRB noted that shade trees must meet certain size requirements, yet "[a] planting schedule with proposed sizing was not . . . provided." DRB Decision at 7. Condition 3 requires Castine to submit a revised landscaping plan and planting schedule, including tree sizes, to the Zoning Administrator. Id. at 10. This condition subsequent is not appropriate. The DRB must review the application materials during a public hearing to determine whether they conform to the applicable Regulations. *See* Regulations § 3.7(2) ("During the public hearing, the DRB must determine that the use will conform to the following . . . ."); id. § 3.7(2)(7) (landscaping plans "shall include" the size of all proposed landscape materials and "shall be designed to conform to" Regulations § 4.6).

than five years, and he does not explain why PUD requirements should apply to this Project. Because we are remanding this matter, and because Mr. Seaberg's claim is inadequately briefed, we decline to answer Question 3. *See* In re Boardman, 2009 VT 42, ¶ 20, 186 Vt. 176 (stating that where a claim "is inadequately briefed and argued, [it] need not be addressed on appeal") (citation omitted). However, we note that Conditional Use applications must include materials stating the "time schedule for completion of buildings, parking spaces and landscaping," unless waived by the DRB. Regulations § 3.8(8). On remand, we encourage the DRB to consider whether the application includes sufficient materials for a complete review. If not, additional submissions and public hearings may be necessary.

### IV.     Undue Water Pollution

Mr. Seaberg's Question 4 asks whether the DRB erred in determining that the Project would not cause undue water pollution. *See* Regulations § 3.7(B)(2) (requiring that the proposed use "will not result in undue water . . . pollution"). Mr. Seaberg argues that the DRB did not address his concerns about a drainage swale shown on the site plans and the potential for stormwater runoff from the Project to damage a septic system on neighboring property. Castine asserts that the drainage swale and associated stormwater issues are not part of this Project, and furthermore that the DRB is not required to address Mr. Seaberg's speculative concerns. We agree that the DRB need not address all concerns, and we note that stormwater issues are addressed through a different set of standards. *See* Regulations § 3.12. However, we cannot assess the relevance of Mr. Seaberg's argument because the DRB did not make sufficient findings of fact or conclusions of law regarding the Project's stormwater drainage system. *See* DRB Decision at 7–8.

Because we are remanding this matter to the DRB so that it may make further findings and conclusions regarding the stormwater drainage system,[9] it would be inefficient and impractical for us to evaluate the DRB's water pollution analysis. On remand, we encourage the DRB to consider whether additional findings of fact or conclusions of law under Regulations § 3.7(2)(B)(2) might help to provide "a clear statement to the parties and the court

---

[9] See our discussion above at pages 5–6.

in the event of an appeal on what was decided and how the decision was reached." Appeal of Leikert, No. 2004-213 at 1 (Nov. 1, 2004).

### V. Number of Bedrooms

Mr. Seaberg by his Question 5 asks whether the DRB erred in determining that the application accurately represented the number of bedrooms in the proposed building. Mr. Seaberg contends that the number of bedrooms relates to number of persons living in the space and therefore the Project's impact on "the capacity of existing or planned community facilities and services." *See* Regulations § 3.7(A)(1). The Project was considered as a multi-family dwelling unit, which is a conditional use in the UMR District. *See* Regulations Table 6.1. The Regulations generally speak in terms of units, not the number of bedrooms or persons. *See, e.g.*, Regulations Table 6.3 (setting density standards). Mr. Seaberg has not pointed to any applicable Regulations governing the number of bedrooms in a unit. The DRB reached no legal conclusions regarding the bedrooms in the proposed building. Because the DRB did not determine that the application accurately represented the number of bedrooms, and because the Regulations do not require such a determination, we answer Question 5 in the negative.

### VI. Scenic Beauty of the Area

Mr. Seaberg's Question 8 asks whether the DRB erred in determining that the proposed landscaping and screening were adequate to protect the scenic beauty of the area. *See* Regulations § 3.7(2)(B)(1) (requiring that the proposed use "[w]ill not have an undue adverse effect on the scenic or natural beauty of the area"). Mr. Seaberg raises concerns related to the landscaping and screening standards under Regulations § 3.7(2)(C)(2) and § 4.6. We have already directed the DRB to amend its decision and incorporate more specific and sufficient findings of fact and conclusions of law related to landscaping.[10] While the details of the landscaping proposal may have some relevance to the scenic beauty of the area, the regulatory provision at issue here does not specifically regulate landscaping. The DRB did not conclude that the landscaping and screening were adequate to protect the scenic beauty of the area, nor was the

---

[10] See our discussion above at pages 6–8.

DRB required to make such a determination under Regulations § 3.7(2)(B)(1). Therefore, we answer Question 8 in the negative.

On remand, we again encourage the DRB to consider whether additional findings of fact or conclusions of law under Regulations § 3.7(2)(B)(1) might help to provide "a clear statement to the parties and the court in the event of an appeal on what was decided and how the decision was reached." Appeal of Leikert, No. 2004-213 at 1 (Nov. 1, 2004).

### VII. Surety Requirement

Mr. Seaberg by his Question 9 asks whether the DRB erred by failing to require a surety to ensure the completion of landscaping installations. Pursuant to Regulations § 4.6(7), "[t]he DRB may require that adequate surety . . . be secured to ensure the completion of the landscaping." This provision gives the DRB discretion over the surety requirement. *See* Weitz v. Weitz, 2019 VT 35, ¶ 8 (noting that "use of the permissive term 'may' shows that [the action] is . . . option[al]"). While Mr. Seaberg may have concerns about the Project's financing or the completion of the landscaping, § 4.6(7) itself does not require any determination or action by the DRB. We conclude that the surety requirement is discretionary, and we therefore answer Question 9 in the negative.

### Conclusion

For the reasons detailed above, we must **VACATE** Conditions 14 and 16 and **REMAND** the application to the Town of Stowe DRB so it may render adequate findings of fact and conclusions of law with respect to the standards established in Regulations §§ 3.12(2)(C) and (E). We also **REMAND** so that the DRB may more fully address the deficiencies identified above in our analysis of Appellant's Questions 1 and 2. We encourage the DRB to review its Decision in full and consider whether additional detail may help to clarify what was decided and how the decision was reached. We recognize that municipal boards are often made up of lay people serving as volunteers, many of whom have limited training in adjudicative matters. We hope that this Decision will assist the DRB in understanding how to fulfill its role of ensuring that property owners and interested persons receive an adjudicative process that is fair, comprehensible, and not unnecessarily delayed. We also note that the deficiencies we have identified in the DRB's decision can be addressed without undue difficulty. Future decisions should note the applicable

standards; render findings of fact specific to the proposal and based on the evidence presented; and relate those findings to the applicable standards to arrive at a conclusion.

This concludes the present matters before the Court concerning this on-the-record appeal. A Judgment Order accompanies this Decision.

Electronically signed on July 16, 2020 at Newfane, Vermont pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division